OPINION Wherry, Judge: This case is before the Court on respondent’s motion to dismiss for lack of jurisdiction. The case constitutes a partner-level action under the unified partnership audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (tefra), Pub. L. 97-248, sec. 402(a), 96 Stat. 324.[1] Background I. Partnership-Level Proceeding Petitioner husband, Randall J. Thompson, engaged in a Son-of-BOSS (boss) market linked deposit transaction in 2001, seeking to offset approximately $21,500,000 in capital gains. To facilitate the BOSS transaction, petitioner husband formed RJT Investments X, LLC (RJT), on October 12, 2001. For its tax year ended December 31, 2001, RJT made all partnership allocations to petitioner husband. The Commissioner issued a notice of final partnership administrative adjustment (fpaa) to RJT for 2001 on March 21, 2005, disallowing deductions and losses and determining an accuracy-related penalty under section 6662. Petitioner husband, as the tax matters partner of RJT, petitioned this Court challenging the FPAA in a partnership-level proceeding, RJT Invs. X, LLC v. Commissioner, docket No. 11769-05. The Court entered a decision in that case on June 6, 2006. That decision was affirmed by the Court of Appeals for the Eighth Circuit in RJT Invs. X, LLC v. Commissioner, 491 F.3d 732 (8th Cir. 2007). II. Issuance of Notice Petitioners’ 2001 Form 1040, U.S. Individual Income Tax Return, included income, deductions, and losses relating to RJT. In a stipulation of facts filed June 16, 2011, the parties agree that “On September 22, 2008, respondent timely mailed an affected items notice of deficiency for the year ending December 31, 2001, to petitioners determining a deficiency in federal income tax and an addition to tax pursuant to I.R.C. § 6662(h).” The “copy of the affected items notice of deficiency issued to petitioners for the year ending December 31, 2001” attached to the stipulation of facts shows the following amounts: (1) $4,634,243.00, labeled “Tax”; and (2) $1,853,697.20, labeled “IRC 6662(h)”. The stipulation of facts further states that “On September 23, 2008, respondent assessed the following against petitioners regarding the flow through adjustments from RJT Investments X, LLC (a) $1,853,697.20 penalty pursuant to I.R.C. § 6662, (b) $4,634,243.00 tax, and (c) $3,053,575.48 interest.” Petitioners filed a petition on December 19, 2008, before the December 22, 2008, date shown as the “Last Day to File a Petition With the United States Tax Court” on the September 22, 2008, notice of deficiency. On December 2, 2009, respondent filed a motion to dismiss for lack of jurisdiction (motion), and a memorandum in support of respondent’s motion to dismiss for lack of jurisdiction. Pursuant to an order of the Court of December 8, 2009, petitioners timely filed a memorandum in opposition to respondent’s motion to dismiss for lack of jurisdiction on December 31, 2009. Respondent’s motion asks that this case be dismissed for lack of jurisdiction upon the ground that no valid statutory notice of deficiency * * * has been sent to petitioners with respect to taxable year 2001, nor has respondent made any other determination with respect to petitioners’ taxable year 2001 that would confer jurisdiction on this Court. [Emphasis supplied.] The motion argues that the September 22, 2008, “notice of deficiency is invalid as the determination relates to computational flow through adjustments that are immediately assessable and not affected items requiring partner-level determinations made through a notice of deficiency”. III. Errors in Notice In reviewing the record in the case, the Court noted two apparent errors by respondent in making adjustments to petitioners’ 2001 Form 1040 to give effect to the June 6, 2006, decision in the partnership-level proceeding. The Court brought these apparent errors to the parties’ attention.[2] The parties subsequently filed a stipulation of settlement on July 26, 2011. The stipulation of settlement states in part that To the extent that this Court has jurisdiction to redetermine respondent’s determination in the September 22, 2008, affected item notice of deficiency, the parties agree that respondent’s determination regarding the deficiency and penalty pursuant to I.R.C. § 6662(h) for 2001, modified as set forth on the Audit Statement and Statement — Income Tax Changes attached hereto as Exhibit B, is correct. [Emphasis supplied.] Exhibit B attached to the July 26, 2011, stipulation of settlement, includes a Form 3610, Audit Statement, and a Form 5278, Statement — Income Tax Changes, for petitioners for tax year 2001, each bearing a date of July 18, 2011. The July 18, 2011, Form 3610 shows a “statutory deficiency” of $4,248,420. Line 21 of the July 18, 2011, Form 5278 confirms that the “Deficiency — increase in tax” is $4,248,420. By comparison, on the September 22, 2008, notice of deficiency, the amount shown as “Deficiency” under “Tax” is $4,634,243.[3] We recognize that the September 22, 2008, notice of deficiency contains deficiency and penalty amounts that are larger than the respective amounts that respondent has now stipulated as “correct”. Presumably, respondent now believes that the smaller stipulated amounts are the appropriate versions of what he characterized in paragraph 7 of his motion as “computational assessments [that] are authorized by I.R.C. § 6230(a)(1) to be directly assessed without the issuance of an affected items notice of deficiency.” Discussion We consider, in sequence, our jurisdiction over petitioners’ income tax deficiency and the accuracy-related penalty. I. Jurisdiction Over Deficiency Whether we have jurisdiction over petitioners’ income tax deficiency, in turn, requires us to decide the following three issues: (1) Whether an affected items notice of deficiency issued in the absence of a need for partner-level determinations is void ab initio; (2) whether an erroneous computational adjustment, which both was made and can be corrected without partner-level determinations, constitutes an additional determination rendering valid the notice containing it; and (3) whether any partner-level determinations are required, in petitioners’ case, to properly reflect the treatment of partnership items made in the partnership-level proceeding. A. Notice Void Ab Initio We first confront the argument that even though an affected items notice of deficiency may not be required in the absence of a need for partner-level determinations, once the Commissioner does issue such a notice, he is bound by it. If this is correct, then, pursuant to section 6213(a), “no assessment of a deficiency in respect of any tax * * * shall be made, begun, or prosecuted * * *, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final.” This argument presumes that an affected items notice of deficiency is elective if no partner-level determinations are needed. Moreover, once the Commissioner makes the election, then the restrictions on assessments are necessarily activated. This argument, and the electiveness of an affected items notice of deficiency, are refuted by the plain language of the statute. The applicability or inapplicability of deficiency procedures under section 6230 is statutorily mandated and bereft of any administrative discretion. Under section 6230(a)(1), “Except as provided in paragraph (2) [relating to affected items requiring partner-level determinations] or (3) [relating to items ceasing to be partnership items], subchapter B of this chapter [containing deficiency notice procedures and requirements] shall not apply to the assessment or collection of any computational adjustment.” (Emphasis supplied.) Conversely, under section 6230(a)(2)(A), “Subchapter B shall apply to any deficiency attributable to * * * affected items which require partner level determinations”. (Emphasis supplied.) Thus, for giving partner-level effect to the treatment of any partnership item, the deficiency procedures of subchapter B, sections 6211 through 6216, either apply or do not, depending upon whether partner-level determinations are, or are not, needed. The Commissioner enjoys no element of choice of any sort. In the absence of a need for partner-level determinations, sections 6211 through 6216 simply do not apply. Consequently, whatever notice the Commissioner may inappropriately (albeit understandably) issue,[4] it cannot trigger the restraints on assessment of section 6213(a).[5] B. Any Other Determination We now consider the contention that in making an erroneous computational adjustment, respondent has “made any other determination with respect to petitioners’ taxable year 2001 that would confer jurisdiction on this Court.” It may be argued that if an affected items notice of deficiency determines an amount higher than the amount that the Commissioner eventually concedes as the definitive deficiency, then the notice does not properly reflect the treatment of the partnership items at issue.[6] Specifically, the argument posits that the acknowledged errors in computing the impact of the treatment of one or more partnership items cause the notice’s determination no longer to be a “computational adjustment” under section 6231(a)(6) but to constitute a “deficiency” within the meaning of section 6211(a). The argument would bring the notice of deficiency within the purview of the deficiency procedures of sections 6211 through 6216. Consequently, whether or not partner-level determinations are needed, the argument would conclude that the notice is valid and validly confers jurisdiction on us to redetermine the deficiency shown in the notice. Supporting this argument is the tenet that the words “properly reflects” in the definition of “computational adjustment” in section 6231(a)(6) are construed to require an objectively ascertainable treatment of a partnership item. Further, the argument assumes that any such ascertainment should be made in the light of all relevant information, regardless of when or how it is revealed. Extending this argument to its logical conclusion yields manifest inconsistencies with the intent and design of the two-tier TEFRA regime. These inconsistencies would inevitably arise because a “computational adjustment” is a predicate for not just a direct assessment under section 6230(a)(1), but also an affected items notice of deficiency under section 6230(a)(2)(B).[7] In particular, the exclusions from the “no-second-notice” rule of section 6212(c), which are contained in section 6230(a)(2)(C) and are restricted to a notice issued under section 6230(a)(2)(B), would be unavailable if an error in a computational adjustment is deemed to be “another determination”. If this determination represents a section 6211(a) deficiency (instead of a section 6231(a)(6) computational adjustment), then the notice containing it would constitute a section 6212(a) notice of deficiency (instead of a section 6230(a)(2)(B) affected items notice of deficiency). Any time we redetermine downwards a deficiency shown in an otherwise validly issued affected items notice of deficiency, after making partner-level determinations, we are necessarily holding incorrect the computational adjustment shown on the notice. If the judicially determined error in the computational adjustment is conceived of as “another determination” that the Commissioner has made, then our holding would ipso facto trigger the prohibition against a second notice contained in section 6212(c). Therefore, if no notice had been previously issued for the same tax year, then the affected items notice would foreclose the possibility of another notice, even with respect to nonpartnership items. More troubling, a prior notice for the same tax year for non-partnership items would render invalid the notice underlying our redetermination. In other words, our redetermination would be moot precisely because we disagree with the Commissioner’s initial determination. We reject such perverse results and the stilted logic that inexorably leads to them. Instead, we hold that the words “properly reflects” in the definition of “computational adjustment” in section 6231(a)(6) are construed as of the time the notice is issued and without looking behind that notice. Thus, if the notice, on its face, purports to give proper effect to the treatment of a partnership item, then the resulting determination is a computational adjustment within the meaning of section 6231(a)(6). Consequently, under section 6230(a)(2)(A), the validity of this notice depends solely on the need for partner-level determinations. C. Do Not Look Behind the Notice; Do Not Go to Tax Court For a jurisdictional inquiry, the words “properly reflects” in the definition of “computational adjustment” in section 6231(a)(6) are construed to require not a reflection that is “proper” (i.e., accurate and correct) in an abstract sense, but merely a reflection that the Commissioner contends is proper. Looking for a reflection in the Commissioner’s all-too human eye instead of one in a perfectly reflecting mirror, under section 6231(a)(6), is in complete harmony with our construction of “deficiency” in section 6211(a). Under section 6211(a), we do not seek to establish an objectively verifiable existence of a deficiency to test the validity of a notice of deficiency. We focus, instead, on the Commissioner’s determination of a proclaimed deficiency. As we explained in Hannan v. Commissioner, 52 T.C. 787, 791 (1969): “it is not the existence of a deficiency but the Commissioner’s determination of a deficiency that provides a predicate for Tax Court jurisdiction. * * * Indeed, were this not true, then the absurd result would be that in every case in which this Court determined that no deficiency existed, our jurisdiction would be lost.” This would, among other things, read out of the Code our incidental refund jurisdiction of section 6512(b). See id.; see also Huffman v. Commissioner, T.C. Memo. 1991-144 (holding that even after the Commissioner subsequently conceded the entire amount of the deficiency initially determined in the notice of deficiency, the notice continued to retain validity for jurisdictional purposes), affd. in part and revd. in part on other grounds 978 F.2d 1139 (9th Cir. 1992). Further, in eschewing to look behind the affected items notice of deficiency, we are being perfectly consistent with our precedent in testing the validity of other “ticket[s] to the tax court”, Corbett v. Frank, 293 F.2d 501, 502 (9th Cir. 1961), viz, section 6212(a) notices of deficiency and section 6330(d)(1)(A) notices of determination.[8] Our holding is also in accord with Meyer v. Commissioner, 97 T.C. 555 (1991). In Meyer v. Commissioner, supra at 559, we observed that the Commissioner “can immediately assess and collect the addition to tax under section 6651(a)(1) * * * if such additions are determined (i.e., measured) by the amount of tax shown on the taxpayer’s return”. For one of the tax years at issue in that case, the Commissioner had summarily assessed an erroneous amount as an addition to tax under section 6651(a)(1). Subsequently, the Commissioner abated this erroneous assessment and included a smaller amount as a section 6651(a)(1) addition to tax in a section 6212(a) statutory notice of deficiency. We did not attempt to verify the accuracy of the smaller amount. Instead, we noted that the “inclusion of the additions to tax under sections 6651(a)(1) * * * in the deficiency notice * * * raises a jurisdictional question”. Id. at 562. Even though the Commissioner had not challenged our jurisdiction, we did so sua sponte. “Having concluded that the additions to tax in question are not subject to the deficiency procedures, * * * [we ruled] on our own motion [to] dismiss this case for lack of jurisdiction and strike as it relates to” the amount of the section 6651(a)(1) addition to tax shown on the notice. Id. We refrained from looking behind the notice to consider whether the amount shown on the notice was the proper section 6651(a)(1) addition to tax. We do the same here with respect to the section 6230(a)(1) computational adjustment that does not need any partner-level determinations. Finally, we note that if we were to hold otherwise, we would allow a taxpayer to proceed with a petition by assigning errors to a notice, even though adjudicating such errors would not require that we make partner-level determinations. Allowing taxpayers such a prepayment forum would circumvent congressional intent as expressed in section 6230(c) limiting a partner’s relief from erroneous computational adjustments to a claim or suit for refund. Whether such a restriction is reasonable or just is for Congress to decide, and we believe it already has.[9] D. No Partner-Level Determinations Needed The September 22, 2008, notice of deficiency made four discrete computational adjustments to petitioners’ 2001 income tax liability, each of which purportedly “properly reflects the treatment under this subchapter of a partnership item”. Sec. 6231(a)(6). These adjustments comprised: (a) Eliminating the $206 of dividend income reported on petitioners’ 2001 Schedule B as income from RJT’s Schedule K-l; (b) eliminating the $12,415 capital loss reported on petitioners’ 2001 Schedule D, line 5, as a flowthrough loss from RJT’s Schedule K-l; (c) eliminating the $81,040 investment expense deduction reported on Schedule A, Itemized Deductions, line 22, as a flowthrough deduction from RJT’s Schedule K-l; and (d) eliminating the reported loss on liquidation of RJT reported on petitioners’ 2001 Schedule D, line 1.[10] All of these computational adjustments follow directly from the treatment of partnership items determined in the partnership-level proceeding, and none of them requires any partner-level determinations within the meaning of section 6230(a)(2) and section 301.6231(a)(6)-l(a)(2), Proced. & Admin. Regs. 1. No Profit Motive Found; No Loss Allowed We begin with the following unremarkable twin propositions. The validity of each is readily apparent from the relevant Code sections, viewed in the light of the Commissioner’s interpretive regulations and the gloss of our own precedent. First, if a TEFRA partnership-level proceeding determines that partnership activities were not engaged in with a profit motive, then for a given tax year a partner’s distributive share of partnership income serves as an upper limit on that partner’s distributive shares of partnership losses and deductions.[11] Second, if the partnership activities were deemed a sham, the partner may not claim a loss on liquidating any part of his partnership interest. If an “activity is not engaged in for profit”, section 183(b)(2) limits deductions attributable to that activity to “the gross income derived from such activity for the taxable year”. “[T]he term ‘activity not engaged in for profit’ means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under * * * section 212.” Sec. 183(c). Though section 183 is limited on its face to “an individual or an S corporation”, we have previously and repeatedly agreed with the Commissioner that “section 183 of the Code applies to the activities of a partnership, and the provisions of section 183 are applied at the partnership level and reflected in the partner’s distributive shares.” Rev. Rul. 77-320, 1977-2 C.B. 78; see also Rev. Rul. 78-22, 1978-1 C.B. 72 (holding that an individual engaged in the same economic activity both as a sole proprietor and as a partner is deemed to be engaged in two distinct activities for section 183 purposes). [12] The two revenue rulings cited above predate TEFRA. However, section 301.6231(a)(3)-l(b), Proced. & Admin. Regs., makes it clear that their logic carries over to TEFRA and “The term ‘partnership item’ includes * * * whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183”. 2. Sham Partnership and Shamed Partner We recognize the analytical separability of a partner’s intent in investing in the partnership from the partnership’s intent in engaging in partnership activities. However, “We have never held that the mere presence of an individual’s profit objective will require us to recognize for tax purposes a transaction which lacks economic substance.” Cherin v. Commissioner, 89 T.C. 986, 993 (1987). For a partner to claim a loss on liquidating his partnership interest, his underlying investment must have been “entered into for profit” within the meaning of section 165(c)(2). But if the partnership activities themselves were a sham, “then such niceties as whether * * * [the partner’s investment] was ‘primarily’ for profit, or whether the test is an objective or subjective one are simply not involved.” Mahoney v. Commissioner, 808 F.2d 1219, 1220 (6th Cir. 1987), affg. Forseth v. Commissioner, 85 T.C. 127 (1985); see also Hoffpauir v. Commissioner, T.C. Memo. 1996-41 (holding that “A taxpayer may not deduct * * * losses under section 165(c)(2) from a tax shelter which lacks economic substance, even if the taxpayer intended to make a profit.”). In other words, for an allowable loss on liquidating a partnership interest, each of the following is a necessary condition. The partner must have had a profit motive for investing in the partnership, and the partnership transactions themselves must not be devoid of economic substance. See Illes v. Commissioner, 982 F.2d 163, 165 (6th Cir. 1992) (formulating a two-part test for deducting investment losses in which “The threshold question is whether the transaction has economic substance. If the answer is yes, the question becomes whether the taxpayer was motivated by profit to participate in the transaction.”), affg. T.C. Memo. 1991-449. Even if the partner had acquired his partnership interest with the individual motive of making a profit, he may not deduct as losses any amounts invested in the partnership if the partnership activities were a sham. See Illes v. Commissioner, supra at 165; Rose v. Commissioner, 868 F.2d 851, 853 (6th Cir. 1989) (declaring that a “court will not inquire into whether a transaction’s primary objective was for the production of income or to make a profit, until it determines that the transaction is bona fide and not a sham”), affg. 88 T.C. 386 (1987); Collins v. Commissioner, 857 F.2d 1383, 1385 (9th Cir. 1988) (stating that “the court does not inquire into a transaction’s primary objective until it determines that the transaction is bona fide, that is, not a sham”), affg. T.C. Memo. 1987-217.[13] E. Conclusion In the related partnership-level proceeding here, RJT Invs. X, LLC v. Commissioner, docket No. 11769-05, the Commissioner had filed a motion for summary judgment on April 5, 2006. That motion asked the Court to sustain the determinations set forth in the FPAA including the claims That the formation of RJT Investments X, LLC, the acquisition of any interest in RJT Investments X, LLC by Randall Thompson and any other partner, the purchase of offsetting positions on market-linked deposits, the transfer of offsetting positions on market-linked deposits, the purchase of assets and the distribution of assets had no business purpose, lacked economic substance, and constituted an economic sham for income tax purposes and were not entered into for a profit motive and therefore should be disregarded for income tax purposes. [Emphasis supplied.] We granted this motion in its entirety in our order filed April 19, 2006. Because we had concluded in the April 19, 2006, order that a profit motive was absent at the partnership-level, our subsequent decision filed June 6, 2006, disallowed all partnership-level deductions and losses.[14] That decision also redetermined the partnership income to be zero,[15] while leaving undisturbed the allocation of all partnership items to petitioner husband.[16] Our partnership-level holding that the partnership activities “were not entered into for a profit motive” is sufficient to deny petitioners any distributive shares of partnership deductions and losses on their individual tax return for tax year 2001.[17] Also, the partnership-level conclusion that partnership activities “constituted an economic sham” forecloses petitioners from claiming any loss on liquidating a partnership interest in a disregarded partnership.[18] We arrive at these conclusions without the need for “partner level determinations” within the meaning of section 6230(a)(2)(A)(i).[19] Consequently, pursuant to section 6230(a)(1), we find ourselves without jurisdiction over petitioners’ income tax deficiency.[20] II. Jurisdiction Over Penalty Our June 6, 2006, decision in RJT Invs. X, LLC v. Commissioner, docket No. 11769-05, determined that an accuracy-related penalty applied at the partnership level. The June 6, 2006, decision had specifically and explicitly exercised subject matter jurisdiction over computing the partners’ outside bases.[21] We had concluded that “RJT Investments X, LLC was a sham, lacked economic substance, and was formed and/or availed [of] to overstate artificially the basis of the interest of Randall Thompson in RJT Investments X, LLC in the amount of $22,006,759 for purposes of tax avoidance.” On the basis of this finding of overstated outside basis, we had sustained “the 40-percent gross valuation misstatement penalty under section 6662(a), (b)(3), (e), and (h), I.R.C. * * * to any gross valuation misstatement resulting from adjustments of the above partnership items.” A. “Out-Of-Sight” Outside Basis After the petition in this case was filed, the Court of Appeals for the D.C. Circuit issued its opinion in Petaluma FX Partners, LLC v. Commissioner, 591 F.3d 649, 655 (D.C. Cir. 2010), affg. in part, revg. in part, vacating in part and remanding on penalty issues 131 T.C. 84 (2008), in which it “rejected the Tax Court’s conclusion that outside basis was a partnership item * * * [that] could * * * be determined in the partnership-level proceeding.” On a direct appeal of that particular partnership-level proceeding, the Court of Appeals concluded that “the Tax Court lacked jurisdiction to determine outside basis * * * [and] to determine that penalties apply with respect to outside basis because those penalties do not relate to an adjustment to a partnership item.” Id. In a supplemental brief, petitioners urge us to heed the Court of Appeals for the D.C. Circuit and hold “that the penalty determination in a case like this does not relate to an adjustment to a partnership item, rather the penalty determination is a non-partnership item which must be determined with a Subtitle B statutory notice of deficiency.” B. Estoppel by Any Other Name We withhold comment on how compelling the admonition by the Court of Appeals for the D.C. Circuit and the urging by petitioners may otherwise be and merely observe that both arrive too late for this case, where the partnership-level proceeding has already been concluded. Our June 6, 2006, decision in RJT Invs. X, LLC v. Commissioner, docket No. 11769-05, and its findings were affirmed, 491 F.3d 732 (8th Cir. 2007), and are now “final” within the meaning of section 7481(a)(2)(A). Petitioners may not, in this partner-level action, collaterally attack subject matter jurisdiction that we had previously exercised in the partnership-level proceeding.[22] The findings in that proceeding are no longer subject to review by this Court.[23] “A valid jurisdictional judgment has preclusive effect, * * * even if erroneous.” Cutler v. Hayes, 818 F.2d 879, 888 (D.C. Cir. 1987); see also Lambert v. Conrad, 536 F.2d 1183, 1185 (7th Cir. 1976) (holding that “a court has jurisdiction to determine its jurisdiction; and once it has made that determination, its decision is binding unless reversed on appeal” (emphasis supplied)). C. Conclusion Pursuant to section 6230(a)(1), the penalty may be directly assessed as a computational adjustment, notwithstanding the need for partner-level determinations.[24] The issuance of a purported notice of deficiency cannot trigger deficiency procedures where none applies. See sec. 6230(a)(2)(A)(i); see also sec. 301.6231(a)(6)-l(a)(3), Proced. & Admin. Regs. The Court has considered all of petitioners’ and respondent’s contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant. To reflect the foregoing, An order of dismissal for lack of jurisdiction will be entered. Reviewed by the Court. Colvin, Halpern, Vasquez, Thornton, and Paris, JJ., agree with this majority opinion. Cohen, J., concurs in the result only. Gustafson and Morrison, JJ., did not participate in the consideration of this opinion. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (Code), as amended and in effect for the year at issue, 2001, and all Rule references are to the Tax Court Rules of Practice and Procedure. The Court uncovered these apparent errors when comparing the June 6, 2006, decision in the partnership-level proceeding and petitioners’ Form 1040, on the one hand, with the adjustments shown on Form 886-A, Explanation of Items, attached to the Sept. 22, 2008, notice of deficiency, on the other. One of these adjustments sought to give effect to the holding in the partnership-level decision of June 6, 2006, that “RJT Investments X, LLC is disregarded for Federal income tax purposes.” Explaining that “We have adjusted your return in accordance with the Tax Court decision for RJT Investments X, LLC”, Form 886-A purports to deny petitioners the entire amount of the short-term capital loss that they had claimed on Schedule D, Capital Gains and Losses, on account of “LIQUIDATION OF RJT INVESTMENTS X, LLC”. Form 886-A shows a “Per Return” short-term capital loss of $22,006,759 and a corresponding positive “Adjustment” in the same amount. However, the Court observed that petitioners’ Schedule D had actually claimed, on line 7, a “Net short-term capital * * * loss” of $21,032,415. The amount of $22,006,759 was, in fact, the claimed “Cost or other basis” of the purported investment in the partnership, shown in column (e) of line 1 of Schedule D. Another adjustment on Form 886-A sought to give effect to the determination in the partnership-level decision of June 6, 2006, that the appropriate amount of the “Partnership Item” described as “Investment income included in portfolio income” was zero and not $206. The Court noted that this redetermination of the relevant partnership item should have “zeroed out” the $206 amount shown on petitioners’ Schedule K — 1, Partner’s Share of Income, Credits, Deductions, etc., on line 4(b), Ordinary dividends. Nonetheless, if the $206 amount was actually received by petitioner husband, it should arguably still have been shown on petitioners’ Schedule B, Interest and Ordinary Dividends, under Part II, Ordinary Dividends. Instead of being denoted “FROM K-l — RJT INVESTMENTS X, LLC”, as petitioners had done, the dividend should have been attributed directly to the underlying security. However, it is unclear whether the partnership-level decision of June 6, 2006, had eliminated the partnership item of $206 of dividend or merely rendered it a nonpartnership item. If the latter, then there should have been no net amount of adjustment to petitioners’ Schedule B. But Form 886-A, under “Dividends”, zeroed out the $206 amount with a negative adjustment in the same amount, without an accompanying positive adjustment to reflect the nonpartnership character of the item. Also, the July 18, 2011, Form 3610 shows an amount under “§ IRC 6662(h)” of $1,699,368. Again, the July 18, 2011, Form 5278 confirms on line 24 that “Penalties and/or Additions to Tax” under “IRC 6662” amount to $1,699,368. By comparison, on the Sept. 22, 2008, notice of deficiency, the amount shown for “IRC 6662(h)” is $1,853,697.20. We note that the deficiency and penalty amounts in the attachments to the July 26, 2011, stipulation of settlement are based on petitioners’ revised taxable income that reflects disallow-anee of a net short-term capital loss of $21,032,415, the actual amount petitioners had claimed on their Schedule D, and not the “Per Return” amount of $22,006,759 shown on Form 886-A. We further note, however, that this revised taxable income still does not account for the $206 dividend amount. As we explain infra Discussion, pt. I.C., we decline to look behind the purported affected items notice of deficiency in testing its validity. We acknowledge that in discovering what appeared to be errors in that notice, we considered material submitted by the parties, including petitioners’ Form 1040, and compared it with attachments to the notice. We ignored all such material in conducting our jurisdictional inquiry. Further, because we conclude infra Discussion, pts. I.E. and II.C., that we lack jurisdiction over the case, we wish to make it clear that in alerting the parties to these apparent errors we did not make any findings on these issues, which speak for themselves in accordance with the statements on the documents. Though the parties have come to an agreement regarding these apparent errors, we disclaim any responsibility for, or jurisdiction over, their agreement. See the Commissioner’s Chief Counsel Notice CC — 2009-11 (Mar. 11, 2009), which outlines a protective assessment procedure for “those cases in which a partner has sold at a loss * * * the TEFRA partnership interest”. Notice CC-2009-11 acknowledges that If the IRS issues a notice of deficiency, the statute of limitations is tolled, but only if section 6230(a)(2) authorizes the notice of deficiency. * * * To account for this uncertainty in classifying affected items, the IRS should issue a notice of deficiency with respect to the affected items and any penalties relating to the affected items * * * [regardless of the need for partner-level determinations. Also], the IRS should assess the entire deficiency, including any penalties, reflecting both the outcome of the partnership-level proceeding as well as what was included in the affected item notice of deficiency. We note that no Court of Appeals has yet concluded as much. The Court of Appeals for the Sixth Circuit in Desmet v. Commissioner, 581 F.3d 297, 302 (6th Cir. 2009), affg. in part and remanding on other grounds Domulewicz v. Commissioner, 129 T.C. 11 (2007), appears to have come close when it acknowledged that “TEFRA prefers that * * * computational adjustments be assessed directly to the partner’s return, without a second set of proceedings against each partner.” By comparison, the Court of Appeals for the Ninth Circuit in Napoliello v. Commissioner, 655 F.3d 1060, 1064 n.1 (9th Cir. 2011), affg. T.C. Memo. 2009-104, declined to “reach the question of whether the notice of deficiency would be invalid if no partner-level determination were necessary.” We do not enjoy the luxury of leaving the issue unresolved here. Petitioners have chosen not to make this argument and declared instead that the computational errors in the affected items notice of deficiency “have no bearing on the Court’s jurisdiction in this case.” Ironically, petitioners’ failure to advance this argument has no bearing on our jurisdictional inquiry. We have an affirmative duty to investigate the extent of our jurisdiction regardless of the parties’ submissions. See, e.g., Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (underlining that courts “have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party”); United States v. Cotton, 535 U.S. 625, 630 (2002) (holding that “subject-matter jurisdiction, because it involves a court’s power to hear a case, can never be forfeited or waived”). See Bush v. United States, 655 F.3d 1323, 1332 (Fed. Cir. 2011) (acknowledging that “Our holding that the assessments in this case meet the definition of ‘computational adjustment’ under I.R.C. § 6231(a)(6) does not end our analysis. Notices of deficiency would still be due for any deficiencies (including any that would otherwise be a computational adjustment) attributable to ‘affected items which require partner level determinations’ under § 6230(a)(2)(A)(i).” (Emphasis supplied.)); Desmet v. Commissioner, supra at 302 (explaining that “the IRS may proceed to make computational adjustments to each partner’s return * * * in one of two ways. First, the IRS may directly assess the tax against the individual partner by making a computational adjustment — applying the new tax treatment of all partnership items to that partner’s return. * * * Second, if the partner’s liability relates to ‘affected items which require partner level determinations,’ then the IRS must send a notice of deficiency to that partner, thereby initiating proceedings against him individually, pursuant to the standard deficiency procedures set forth in I.R.C. §§ 6211-16." (Emphasis supplied.) (Citations omitted.)). In the context of a sec. 6212(a) notice of deficiency, we laid down a general rule of not looking behind the notice to determine its validity in Greenberg’s Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). We have adhered to this rule ever since. See Pietanza v. Commissioner, 92 T.C. 729, 735 (1989), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991); Riland v. Commissioner, 79 T.C. 185, 201 (1982); Estate of Brimm v. Commissioner, 70 T.C. 15, 22 (1978). Also, in deciding whether the Commissioner has made a “determination” within the meaning of sec. 6212(a), we need only examine the face of the notice. See Sealy Power, Ltd. v. Commissioner, 46 F.3d 382, 388 n.25 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1992 — 168; Clapp v. Commissioner, 875 F.2d 1396, 1402 (9th Cir. 1989); Campbell v. Commissioner, 90 T.C. 110 (1988); cf. Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987) (holding that because the face of the notice of deficiency revealed that the Commissioner had failed to make a “determination” within the meaning of sec. 6212(a), the notice was insufficient to confer jurisdiction on the Court), revg. 81 T.C. 855 (1983). We extended these principles of limiting our gaze to a notice’s surface to sec. 6330(d)(1)(A) notices of determination in Lunsford v. Commissioner, 117 T.C. 159, 164 (2001). In so doing, we overruled precedent holding that we must first look behind the determination to see whether a proper hearing was offered in order to have jurisdiction. See Meyer v. Commissioner, 115 T.C. 417 (2000), abrogated by Johnson v. Commissioner, 117 T.C. 204 (2001). Compare sec. 6230(a)(3)(A) (using the phrase “request for abatement” (emphasis supplied) for seeking innocent spouse relief from “a liability that is attributable to any adjustment to a partnership item”), with sec. 6230(c)(1) (using the phrase “claim for refund” (emphasis supplied) for a claim made “on the grounds that * * * the Secretary erroneously computed any computational adjustment necessary * * * to apply to the partner a * * * decision of a [TEFRA partnership-level proceeding]”). See also Ackerman v. United States, 643 F. Supp. 2d 140, 146, 147—148 (D.D.C. 2009) (after confirming that “The critical question in this case is whether the term ‘claim for refund* [in sec. 6230(c)(1)] requires that payment be made before the claim is filed”, the court concluded “that Congress purposely used the term ‘claim for refund* in section 6230(c). * * * It is unlikely * * * that Congress did not intend ‘claim for refund* when it wrote ‘claim for refund’ in section 6230(c).” (Emphasis supplied.) (Citations omitted.)). These adjustments necessitated respondent’s making the following accompanying changes to petitioners’ individual tax liability, which are not deemed to constitute partner-level determinations under sec. 301.6231(aX6)-l(a)(2), Proced. & Admin. Regs.: Decreasing petitioners’ 2001 itemized deductions by $170,283 to eliminate the $81,040 investment expense deduction mentioned above and to reflect a higher “floor” for such deductions; and recomputing petitioners’ 2001 alternative minimum tax. This excludes, pursuant to sec. 183(b)(1), “deductions which would be allowable * * * without regard to whether or not such activity is engaged in for profit”, such as State and local taxes and casualty losses. No such deductions are at issue here. We have concurred with this reasoning and concluded that in a sec. 183 inquiry in a partnership context, “the profit motive analysis is made at the partnership level.” Antonides v. Commissioner, 91 T.C. 686, 694 (1988), affd. 893 F.2d 656 (4th Cir. 1990); see also Peat Oil & Gas Associates v. Commissioner, 100 T.C. 271 (1993) (holding that motives of promoters and managers of partnership control a sec. 183 analysis), affd. sub nom. Ferguson v. Commissioner, 29 F.3d 98 (2d Cir. 1994); Krause v. Commissioner, 99 T.C. 132, 168 (1992) (“Whether activities of partnerships were engaged in with actual and honest profit objectives is analyzed at the partnership level.”), affd. 28 F.3d 1024 (10th Cir. 1994); Rosenfeld v. Commissioner, 82 T.C. 105 (1984) (declaring irrelevant the intent of individual coowners for analyzing partnership’s profit motive); Surloff v. Commissioner, 81 T.C. 210, 233 n.58 (1983) (stating that for sec. 183 purposes, “the partnership itself is the entity that is or is not in a trade or business”). We find unanimity among the various Courts of Appeals that have considered this issue, which have all held that a sec. 183 analysis for a profit motive in a partnership context is properly conducted at the partnership level. See Copeland v. Commissioner, 290 F.3d 326 (5th Cir. 2002), affg. in part and revg. in part on other grounds T.C. Memo. 2000-81; Hill v. Commissioner, 204 F.3d 1214 (9th Cir. 2000); Underwood v. Commissioner, 203 F.3d 836 (10th Cir. 2000). However, we do detect a difference of opinion between at least two Courts of Appeals in how sec. 183 operates to disallow deductions claimed by a partner in a TEFRA partnership. The Court of Appeals for the Ninth Circuit has stated that sec. 183 directly “applies to partnerships despite the statute’s failure to mention them.” Hill v. Commissioner, supra at 1218. The Court of Appeals for the Fifth Circuit, on the other hand, has held “that the factors from I.R.C. § 183 are only tools for determining the requisite profit objective under I.R.C. §§ 162 and 174; deductions for partnership expenses are not allowed or disallowed directly under I.R.C. § 183 itself.” Copeland v. Commissioner, supra at 335. The preceding suggests that while the Court of Appeals for the Ninth Circuit would consider the disallowance of a deduction under sec. 183 a partnership item for TEFRA purposes, the Court of Appeals for the Fifth Circuit would treat it as an “affected item”. This difference of opinion does not affect our conclusion regarding the absence of any need for partner-level determinations in this case. See infra notes 17 and 19. See also Marinovich v. Commissioner, T.C. Memo. 1999-179; Schafer v. Commissioner, T.C. Memo. 1994-569; Farmer v. Commissioner, T.C. Memo. 1994-342; Wright v. Commissioner, T.C. Memo. 1994 — 288; Daoust v. Commissioner, T.C. Memo. 1994-203; cf. Fid. Intl. Currency Advisor A Fund, LLC v. United States, 747 F. Supp. 2d 49, 236 (D. Mass. 2010) (concluding as a matter of law that “Even if taxpayers invest in a partnership with the individual objective of making a profit, they are not entitled to deduct any amounts invested in the partnership as losses under Section 165(c)(2) if the partnership transactions are not entered into for profit”, but going on to contend that applicability of sec. 165(c)(2) is an “affected item” and beyond the subject matter jurisdiction of a TEFRA partnership-level proceeding). Even assuming arguendo that applying sec. 165(c)(2) to limit a loss claimed on liquidating a partnership interest is an "affected item”, its resolution does not require any additional factual partner-level determinations if the partnership-level proceeding had previously concluded that the partnership activities were an economic sham. See infra note 19. We acknowledge that neither our order filed Apr. 19, 2006, nor our decision filed June 6, 2006, in RJT Invs. X, LLC v. Commissioner, docket No. 11769-05, cited sec. 183. We note, however, that the redetermination of partnership items set forth in our June 6, 2006, decision is perfectly consistent with a sec. 183 analysis applied at the partnership level. We also note that pursuant to sec. 6226(h): “If an action brought under this section is dismissed, * * * the decision of the court dismissing the action shall be considered as its decision that the notice of final partnership administrative adjustment is correct”. The Commissioner’s motion for summary judgment filed Apr. 5, 2006, had pointed out that “the practical effect of [petitioner’s] calling no witnesses and being held to the issues and arguments raised in his issues memorandum means that there are no genuine issues that can be disputed at trial.” That motion, granted on Apr. 19, 2006, had asked as ultimate relief “that the determinations of the Commissioner [set forth in the FPAA] be sustained.” On the basis of the foregoing, we have presented above an explication of the findings and holdings of the partnership-level proceeding. Though both our Apr. 19, 2006, order and June 6, 2006, decision were terse, parsing and explicating their findings and holdings here does not, and cannot be construed to, constitute a partner-level determination. See supra note 3, pointing out that respondent has chosen not to include the $206 dividend amount in petitioners’ taxable income for tax year 2001 as a nonpartnership item. We need not, and therefore do not, decide whether including this amount would have necessitated partner-level determinations. We note that ascertaining whether receipt of a dividend constitutes “qualified dividend income”, as defined by sec. l(h)(ll)(B)(i), could, in certain circumstances, entail making partner-level determinations. “A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, [and] the proper allocation of such items among the partners”. Sec. 6226(f) (emphasis supplied). This case, absent a stipulation of the parties to the contrary, is appealable to the Court of Appeals for the Eighth Circuit, which does not appear to have decided whether deductions may be disallowed directly under sec. 183 at the partnership level. If the Court of Appeals were to do so by, for example, following Hill v. Commissioner, 204 F.3d at 1218, discussed supra note 12, it would obviate the need for any partner-level determinations. Even assuming arguendo that the Court of Appeals for the Eighth Circuit follows Copeland v. Commissioner, 290 F.3d at 335, discussed supra note 12, and treats the consequences of applying sec. 183 to the partnership as an “affected item”, no partner-level determinations would be called for here. See infra note 19. Our Apr. 19, 2006, order granting respondent’s motion for summary judgment may be construed as determining at the partnership level, and as a partnership item, the absence of a profit motive in “the acquisition of any interest in RJT Investments X, LLC by Randall Thompson”. That order has now become “final” within the meaning of sec. 7481(a)(2)(A). This alone should suffice for concluding that no further partner-level determinations are needed here. However, even if we assume that applying sec. 165(c)(2) to deny a loss on liquidating a partnership interest is an “affected item” to be determined in a partner-level proceeding, such a determination requires no further partner-level facts once the partnership activities have been deemed to lack economic substance. See supra note 13 and accompanying text; infra note 19. Moreover, a partnership-level conclusion that the partnership “is disregarded for Federal income tax purposes”, while leaving unchanged the allocation of all partnership items to petitioner husband, effectively reduces the purported partnership to a “single-member disregarded entity”. Cf. sec. 301.7701 — 3(a) and (b), Proced. & Admin. Regs, (providing in part that “unless the entity elects otherwise, a domestic eligible entity is * * * Disregarded as an entity separate from its owner if it has a single owner”). It is a truism that no loss can be recognized on liquidating a single-member disregarded entity. See Callaway v. Commissioner, 231 F.3d 106, 110 & n.4 (2d Cir. 2000) (“An example of an affected item that requires no further factual determination at the partner level * * * [is an] allowable deduction * * * which * * H depends on the partner’s distributive share of the partnership income or loss. Determining the allowed deduction is a mathematical calculation and requires no further factual finding.”), revg. on other grounds T.C. Memo. 1998-99. We are confronted in the instant case by, in effect, “a mathematical formula” that requires petitioner husband’s distributive shares of partnership deductions and losses to be no higher than his distributive share of zero income. Further, the partnership-level finding of an economic sham causes sec. 165(c)(2) to eliminate, or set to zero, any claimed loss on liquidating the partnership interest. We are mindful that respondent has not spelled out the arguments that we have developed and relied upon to demonstrate the absence of a need for partner-level determinations. We are equally mindful, however, that we are engaged in exploring the outer limits of our subject matter jurisdiction. In conducting this exercise, we would be derelict in our duty if we were to rest solely on the parties’ submissions. See supra note 6. In RJT Invs. X, LLC v. Commissioner, docket No. 11769-05, the partnership, through its tax matters partner, had filed a motion on Apr. 5, 2006, arguing in part that it “seeks an order from the Court that the Court’s jurisdiction in this case * * * Excludes * * * Redetermining Randall Thompson’s outside basis in” the partnership. We had denied that motion in its entirety in our order filed Apr. 19, 2006. “Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.” Montana v. United States, 440 U.S. 147, 153 (1979) (emphasis supplied). While the reference to “a court of competent jurisdiction” might suggest that collateral estoppel presupposes valid subject matter jurisdiction, in fact the doctrine applies to preclude a subsequent challenge to subject matter jurisdiction. See Carr v. District of Columbia, 646 F.2d 599, 608 (D.C. Cir. 1980) (holding that “‘When the question of the [rendering] tribunal’s (subject matter) jurisdiction is raised in the original action, * * * there is no reason why the determination of the issue should not therefore be conclusive Tinder the usual rules of issue preclusion.’” (quoting Restatement (second) of Judgments sec. 15, cmt. c at 154 (Tent. Draft No. 6, 1979) (emphasis supplied)). Privity for invoking collateral estoppel is supplied by sec. 6226(c)(1) (specifying that “each person who was a partner in such partnership at any time during such year shall be treated as a party to such action” (emphasis supplied)). Collateral estoppel is usually invoked as an affirmative defense. Under Rule 39, “A party shall set forth in the party’s pleading any matter constituting an avoidance or affirmative defense, including * * * collateral estoppel”. Jefferson v. Commissioner, 50 T.C. 963, 966-967 (1968), suggests that unless collateral estoppel is affirmatively pleaded, it is deemed waived. However, we have long held that we may raise collateral estoppel sua sponte. See, e.g., Monahan v. Commissioner, 109 T.C. 235, 250 (1997); Fazi v. Commissioner, 105 T.C. 436, 445 (1995). More importantly, insisting that the Commissioner affirmatively plead collateral estoppel in every TEFRA partner-level action is an unworkable rule. It would necessitate that we assert jurisdiction even if only to preclude relitigating partnership items. This would defeat, by procedure, clearly enunciated legislative intent of attaining speed and symmetry at the partner level. TEFRA represents in large part the codification of the collateral estoppel doctrine in the partnership context. See generally Wolff v. Commissioner, T.C. Memo. 1994-196 (“The implication here is that in pre-TEFRA proceedings a partner would not be collaterally estopped by the litigation involving another partner in the same partnership.”), revd. on other grounds 148 F.3d 186 (2d Cir. 1998); H. Conf. Rept. 97-760, at 62 (1982), 1982-2 C.B. 600, 662 (noting that under pre-TEFRA law, “a judicial determination of an issue relating to a partnership item generally is conclusive only as to those partners who are parties to the proceeding”); Staff of Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 268 (J. Comm. Print 1982) (observing that before enactment of TEFRA, “Duplication of manpower and administrative and judicial effort was required in some cases to determine the aggregate tax liability attributable to a single partnership item. Inconsistent results could be obtained * * * with respect to the same item”). Requiring the Commissioner to affirmatively plead collateral estoppel in a TEFRA partner-level action to give pre-clusive effect to the prior findings and conclusions of a partnership-level proceeding would fatally undermine the basic premises of TEFRA — conservation of judicial effort and consistent treatment of all partners in the same partnership. Secs. 6221, 6226(f), and 6230(c)(4) embody the codification of collateral estoppel with respect to the partnership-level adjudication of partnership items and penalties relating to adjustment of partnership items. Relitigating these items in a partner-level prepayment forum is, thus, statutorily estopped. Subject to the requirements of sec. 7422(h), a refund forum may be “allowed to assert any partner level defenses that may apply or to challenge the amount of the computational adjustment.” Sec. 6230(c)(4). We note a potential ambiguity in the parenthetical phrase “other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items” at the end of sec. 6230(a)(2)(A)(i). The parenthetical phrase carves out these penalties from the set of affected items requiring partner-level determinations that are always subject to deficiency procedures. Read without the parenthetical phrase, sec. 6230(a)(2)(A)(i) is explicit that deficiency procedures “shall apply to any deficiency attributable to * * * affected items which require partner level determinations”. (Emphasis supplied.) Thus, one plausible reading of the impact of the parenthetical carveout is that deficiency procedures never apply to penalties relating to adjustments to partnership items. However, an equally plausible reading is that deficiency procedures do not always apply to these penalties; i.e., deficiency procedures may or may not apply to such a penalty. The latter construction would render elective a notice of deficiency that contains these penalties. Compare supra Discussion, pt. I.A., arguing against the electiveness of an affected items notice of deficiency with respect to the income tax deficiency shown on the notice. Under this “elective” construction, the validity of an affected items notice of deficiency pertaining to a sec. 6662 penalty relating to an adjustment to a partnership item would not be disturbed by a subsequent direct assessment of this penalty. Because- the statutory language is ambiguous, we turn to the regulations for guidance. See Mayo Found. v. United States, 562 U.S. _, _, 131 S. Ct. 704, 713 (2011) (clarifying that the Commissioner’s regulatory pronouncements are generally entitled to the standard of deference set forth in Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984)). The governing regulation for petitioners’ tax year at issue, 2001, is sec. 301.6231(a)(6)-l(a)(3), Proced. & Admin. Regs. Unlike the statute, the regulation is unambiguous that “any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item is not subject to the deficiency procedures”. (Emphasis supplied.) The regulation does not eliminate all “elective” phraseology, however; it provides that the penalty “may be directly assessed * * * following the partnership proceeding, based on determinations in that proceeding, regardless of whether any partner level determinations may be required.” Sec. 301.6231(a)(6)-l(a)(3), Proced. & Admin. Regs, (emphasis supplied). The word "may” retains the notion of a choice on the Commissioner’s part. However, in its context in the regulation, following immediately after a clause that unambiguously rejects the applicability of deficiency procedures to a penalty, “may” seems to denote a different choice— not a choice between directly assessing a penalty and subjecting it to deficiency procedures, but instead a choice between directly assessing the penalty and not assessing it at all. The implication appears to be that the Commissioner may elect not to assess a penalty against a given taxpayer partner, and allow this partner to go penalty free, despite successfully defending the asserted penalty at the partnership level. If the regulation governs, any affected items notice of deficiency showing a penalty relating to an adjustment to a partnership item is invalid. Despite having issued such a notice, the Commissioner can proceed with a direct assessment and collection of the penalty, limiting the taxpayer partner’s recourse to a suit or claim for refund. See sec. 6230(c)(4) (stating that in such a refund claim or suit, “a partner shall be allowed to assert any partner level defenses that may apply” to the penalty).