Holmes, J., dissenting: It is customary and appropriate for us to reconsider an issue after being reversed by a circuit court, and stick to our position if we think it right. But only if the case we use to reaffirm ourselves is appealable to a different circuit. When, as unfortunately we do today, we brazenly challenge the D.C. Circuit’s precedent in Petaluma FX Partners, LLC v. Commissioner, 591 F.3d 649 (D.C. Cir. 2010) (Petaluma II), aff’g in part, rev’g in part and remanding in part 131 T.C. 84 (2008) (Petaluma I), in a case appealable to that court we risk being seen as impudent. We also risk not even getting that court to reconsider — the D.C. Circuit treats its published opinions as stare decisis for later panels, see, e.g., Sierra Club & Valley Watch, Inc. v. Jackson, 648 F.3d 848, 854 (D.C. Cir. 2011), so what we are really asking is for the parties to appeal and then petition for en banc reconsideration. Before today, our Court recognized the importance of circuit-court precedent. In our landmark decision in Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff’d, 445 F.2d 985 (10th Cir. 1971), we held “that better judicial administration requires us to follow a Court of Appeals decision which is squarely in point where appeal from our decision lies * * * to that court alone.” (Fn. ref. omitted.) Golsen tells us not to bang our head against contrary appellate precedent, and we’ve consistently held that we must follow the precedent of the court that has appellate jurisdiction over a case. See Bergmann v. Commissioner, 137 T.C. 136, 146 (2011) (“Because this case is appealable to the * * * Ninth Circuit, we follow that court’s precedent”); Wechsler & Co. v. Commissioner, T.C. Memo. 2006-173 (“[U]nder the doctrine of Golsen * * * we must apply [Second Circuit] precedents * * * to the extent that they contradict our precedents”).[1] The tsuris this will cause us — where two circuit courts,[2] a few trial courts,[3] the Department of Justice, and even the IRS (at times) all disagree with the position we’re taking— cannot possibly be worth it. Especially when it’s nothing more than a dispute about a complicated little bit of partnership-tax law — and not even substantive partnership-tax law, but partnership-tax-law procedure. And a point of partnership-tax-law procedure in a motion to revise a stipulated decision we entered in 2009. This was not the case to use to revisit Petaluma I: “[I]n most matters it is more important that the applicable rule of law be settled than that it be settled right.” Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting). I’ll begin with an analysis of why the majority’s maneuver around the precedent it’s bound to follow is bound to fail, and then move on to an active defense of that precedent. For not only do I believe Golsen requires us to follow Petaluma II in this case; I believe the D.C. Circuit got it right both on the question of whether outside basis is a partnership item, and on the limits of our jurisdiction over penalties at the partnership level. I — I Before we hinted in a footnote in Countryside Ltd. P’ship v. Commissioner, T.C. Memo. 2008-3 n.4, that we might begin to view things differently, we had consistently held that outside basis was generally an affected item.[4] But in Petaluma I, we officially changed course to hold that outside basis was a partnership item in “situation[s] where no partner-level determinations are necessary.” The D.C. Circuit disagreed, and reversed us in Petaluma II — a case that’s almost identical to this one. In Petaluma FX Partners, LLC v. Commissioner, 135 T.C. 581 (2010) (Petaluma III), we tried to comply with the D.C. Circuit’s mandate in Petaluma II. That decision is so recent that the appeal from it is still under submission. Yet the majority in this case offers up essentially two theories as to why we don’t have to follow Petaluma II and Petaluma III in this case. It argues that • the jurisdictional limitations established in Petaluma II were based on a concession of the Government that outside basis was an affected item; and • the D.C. Circuit did not consider the applicable regulation in Petaluma II when it concluded that outside basis is an affected item, and therefore that opinion is superseded by the intervening opinions of the Supreme Court in Mayo Found, and the D.C. Circuit in Inter mountain. I begin by looking at the merits of these arguments. I also ask whether it’s up to us, as a trial court, even to make them. A. The majority assumes that Petaluma IFs holding was dictated by the Government’s concession on appeal that outside basis was an affected item. But parties can’t concede that a court has subject matter jurisdiction over a case; a court has to decide that for itself. See, e.g., NAACP v. New York, 413 U.S. 345, 353 (1973); Mondy v. Sec’y of the Army, 845 F.2d 1051, 1055 (D.C. Cir. 1988) (defendant’s concession regarding jurisdiction didn’t matter to court’s jurisdictional analysis); McGowan v. Commissioner, 67 T.C. 599, 607 (1976). And because the D.C. Circuit’s jurisdiction over outside basis depended on ours, the Government’s concession on appeal didn’t bind the D.C. Circuit and was irrelevant to its jurisdictional analysis. Despite what the majority insinuates, the D.C. Circuit was clear that it understood all this: On appeal the Commissioner concedes that outside basis is not a partnership item in this case. Instead, he asserts that outside basis is an affected item whose elements are mainly or entirely partnership items. He maintains that the Tax Court had jurisdiction to state the “obvious conclusion” that a partner cannot have any basis in a disregarded partnership. The correctness of this conclusion is immaterial, however, for the question is not whether the Tax Court’s determination was correct, but whether the Tax Court had jurisdiction to make that determination at all in this partnership-level proceeding. * * * ^ * * * We have already rejected the Tax Court’s conclusion that outside basis was a partnership item in this case, and we likewise reject the Commissioner’s contention that outside basis, although it is an affected item, could nonetheless be determined in the partnership-level proceeding. * * * [Petaluma II, 591 F.3d at 654-655; emphasis added.] This jurisdictional question is a question of law. Courts are never bound by a concession on appeal as to a question of law, see, e.g., United States v. Ginyard, 444 F.3d 648, 649, 651-652 (D.C. Cir. 2006), so if the D.C. Circuit really did accept an erroneous concession of jurisdiction, it would have committed a reversible error. I just don’t believe that to be the case. Even assuming arguendo that the D.C. Circuit relied upon the Government’s concession at all, that court also gave an additional reason for holding that outside basis was an affected item under the plain language of section 6231(a)(3). The fact that a determination seems obvious or easy does not expand the court’s jurisdiction beyond what the statute provides. In other words, it does not matter how low the fruit hangs when one is forbidden to pick it. We hold that the Tax Court had no jurisdiction to determine that Petaluma’s partners had no outside basis in the disregarded partnership. Finally, we note that nothing about the concept of outside basis indicates that it is more appropriately determined at the partnership level. If disregarding a partnership leads ineluctably to the conclusion that its partners have no outside basis, that should be just as obvious in partner-level proceedings as it is in partnership-level proceedings. Moreover, with the invalidity of the partnership conclusively established as a partnership-level determination, there is little danger that outside basis will receive inconsistent treatment at the individual partner level. [Petaluma II, 591 F.3d at 655; emphasis added.] The majority incorrectly dismisses Petaluma II's discussion of outside basis as dicta. Where a decision rests on two or more separate grounds, none is dictum. See, e.g., United States v. Title Ins. & Trust Co., 265 U.S. 472, 486 (1924); Natural Res. Def. Council, Inc. v. NRC, 216 F.3d 1180, 1189 (D.C. Cir. 2000). We should instead regard the D.C. Circuit’s holding in Petaluma II about outside basis as binding precedent. B. The majority also reasons that “[b]ecause the Court of Appeals did not consider the regulation in concluding in Petaluma II that outside basis is an affected item, * * * its decision on the outside basis issue in Petaluma II has been superseded by the intervening opinions of the Supreme Court in Mayo Found. and the Court of Appeals in Intermountain.” See op. Ct. p. 112. Here is the real beginning of our trouble. It’s not plausible to read Petaluma II as just a mistake caused by the D.C. Circuit overlooking the regulation the majority relies on when there’s a simpler reading of that opinion: The D.C. Circuit construed the Code itself to make outside basis an affected item — the low-hanging forbidden-fruit metaphor implies that if an item is not more appropriately determined at the partnership level or is not an item with respect to a partnership’s own tax year, it is not a partnership item. Petaluma II, 591 F.3d at 655. Even if determining it would be really, really easy at the partnership level. The majority asserts that Mayo Found, for Med. Educ. & Research v. United States, 562 U.S. _, 131 S. Ct. 704 (2011), and Intermountain Ins. Serv. of Vail, LLC v. Commissioner, 650 F.3d 691 (D.C. Cir. 2011), rev’g 134 T.C. 211 (2010), somehow changed the legal landscape that the court relied on in Petaluma II. I disagree. In Mayo Found., the Supreme Court held that courts must apply Chevron's two-step framework (rather than the multifactor test of National Muffler) to analyze the validity of regulations. See id. at _, 131 S. Ct. at 713-714. That wasn’t, however, new law in the D.C. Circuit — it had been applying Chevron deference to regulations at least since 2003, well before either Petaluma II or Mayo Found. See Tax Analysts v. IRS, 350 F.3d 100, 102-103 (D.C. Cir. 2003). And nobody — in this case or in any of the Petaluma cases — has said the regulation is invalid. It’s not even true that the D.C. Circuit overlooked the regulation: A glance at Petaluma II shows that the court cited section 301.6231(a)(3)-1, Proced. & Admin. Regs. In fact, it cited the regulation three times. Petaluma II, 591 F.3d at 650, 653. But the majority infers from the D.C. Circuit’s failure to construe the section of the regulation that deals with distributions and contributions, section 301.6231(a)(3)-l(a)(4) and (c), Proced. & Admin. Regs., that it did not consider that regulation in reaching its holding that outside basis was an affected item. It’s more reasonable to conclude that it just didn’t read the regulation the way the majority here does today. Fighting the D.C. Circuit’s holding in Petaluma II is hard enough, but fighting it with an argument that the court missed the relevant regulation — when it actually cited it — will probably prove less than entirely persuasive. The majority’s reliance on Intermountain is also misplaced. In Intermountain, the D.C. Circuit held that old Code section 275(c) was ambiguous and that Congress added language to section 6501(e)(1)(A) to resolve the ambiguity. See id. at 701-702. It also held that Colony, Inc. v. Commissioner, 357 U.S. 28 (1958), only dealt with the interpretation of old section 275(c), and didn’t unambiguously foreclose the new regulation applying new section 6501(e)(1)(A). Intermountain, 650 F.3d at 703-704. The court then, as Chevron requires, analyzed the text of the relevant Code section and the reasonableness of the regulation. See id. at 704-710. Nothing new here either. In neither this case nor Petaluma is there anything like the problem created by Colony — a precedent that predates a regulation and might affect its validity. And Petaluma II interpreted the very same tefra regulations that we are dealing with here. Colony, in contrast, did not interpret the regulations at issue in Inter-mountain', it was relevant only to the question of whether the Code section in that case was ambiguous. The majority here cannot reasonably use Intermountain to disregard Petaluma IPs interpretation of the TEFRA regulations. What the majority is really arguing is that if only the D.C. Circuit knew about its more elaborate argument, it would surely overrule Petaluma II. The rule for Article III courts in this situation is clear: The Supreme Court has instructed appellate courts not to anticipatorily overrule outdated precedent. We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that “if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.” * * * [Agostini v. Felton, 521 U.S. 203, 237 (1997); citation omitted.] I can think of no reason for our relation with the appellate courts that review our work to be any different. I — I Even if we weren’t climbing such a towering mountain of contrary authority, I’d still be skeptical of the majority’s analysis. Absent a few very limited exceptions, the Code and regulations make outside basis an affected item. A. “[O]ur starting point must be the language employed by Congress.” Reiter v. Sonotone Corp., 442 U.S. 330, 337 (1979). Section 6231(a)(3) says: The term “partnership item” means, with respect to a partnership, any item required to be taken into account for the partnership’s taxable year under any provision of subtitle A, to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level. The majority boils it down to this: “A partnership item is an item that is (1) required to be taken into account under any provision of subtitle A, governing income taxes, and (2) identified by the Secretary in the regulations as ‘more appropriately determined at the partnership level.’” See op. Ct. p. 98. The majority’s reconstructed definition, however, leaves out an important phrase. Look at the first part of section 6231(a)(3) — “[W]ith respect to a partnership, any item required to be taken into account for the partnership’s taxable year under any provision of sub- HH title A.” The majority construes this to mean that an item only needs to be related to a partnership and “taken into account in computing the income tax liability” of a partner. See op. Ct. p. 116; see also op. Ct. p. 105. This would make the modifier “partnership’s” before “taxable year” superfluous — section 6231(a)(3) already requires the item be related to or “with respect to a partnership.” The phrase is no accident — “partnership’s taxable year” is a defined term, see sec. 706, and “partnership’s taxable year” or “partnership taxable year(s)” appears in twenty or so Code sections.[5] The Code makes sure that a partnership has its own tax year as if it were a taxpayer apart from its partners.[6] See sec. 706(b)(1). And the tax years for partners and partnerships may even start and end on different dates. See sec. 706(b)(2); sec. 1.706-1, Income Tax Regs. We must read section 6231(a)(3) in pari materia with section 706. “We can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit.” United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 236 (1955). The phrase “partnership’s taxable year,” read this way, limits the substantive reach of the Code’s definition of a “partnership item.” A partnership item has to have something to do with the partnership’s (and not, by implication, just with the partners’) tax year. That’s why section 301.6231(a)(3)-1(a), Proced. & Admin. Regs., says that a partnership item is an item that is “required to be taken into account for the taxable year of a partnership” under any income tax provision of the Code. That leads me to my next point — section 6231(a)(3) also says that a partnership item isn’t a partnership item unless a regulation makes it one. But that section adds yet one more restriction. The Secretary can provide in the regulations that something is a partnership item only after he concludes that it’s more appropriately determined at the partnership level than at the partner level. What the majority is missing is that the Commissioner didn’t expressly conclude it is more appropriate to determine outside basis at the partnership level than at the partner level. The Code doesn’t say that a partnership item is defined by the certainty with which a factfinder can determine it from what he knows at the partnership level.[7] After all, Petaluma II taught us that even if something is determinable at the partnership level, it can still be more appropriately determined at the partner level. B. The majority’s attack on Petaluma II will succeed or fail, though, on the strength of its interpretation of the regulations defining partnership and affected items. Section 301.6231(a)(5)-l(b), Proced. & Admin. Regs., defines affected items, and provides that “[t]he basis of a partner’s partnership interest [(i.e., outside basis)] is an affected item to the extent it is not a partnership item.” One might reasonably read this as stating a general rule that outside basis is an affected item, but with a few exceptions. The majority, however, enthusiastically finds a great many instances where outside basis is a partnership item. Cataloging them all, one finds that the majority would hold outside basis to be a partnership item when • outside-basis computations are made under the general rule of section 705(a), see op. Ct. pp. 112-114;[8] • outside-basis computations are made under the alternative rule of section 705(b), see op. Ct. pp. 114-115; and, of course • whenever the partnership is a sham. Thus, the first problem with the majority’s result: It’s usually not a good reading when the exception swallows all but a bit of the tail of the general rule. Stranger things have happened in tax law — but probably not here. The regulation itself lists one exception to the general rule that outside basis is an affected item: “Optional adjustments to the basis of partnership property pursuant to an election under section 754 (including necessary preliminary determinations, such as the determination of a transferee partner’s basis in a partnership interest).” Sec. 301.623l(a)(3)-l(a)(3), Proced. & Admin. Regs. This makes sense. The reason outside basis is a partnership item when a partnership makes a section 754 election is that such a partnership itself needs to determine its partners’ outside bases to redetermine the partnership’s own inside basis for the “partnership’s taxable year.” [9] This specific exception has, of course, nothing to do with this case because Tigers Eye never made a section 754 election. [10] The majority instead looks at the regulation’s general discussion of contributions and distributions, section 301.6231(a)(3)-l(a)(4) and (c), Proced. & Admin. Regs., and finds there its proof that outside basis is a partnership item, at least when it can be determined exclusively from other partnership items. But that’s not exactly what the regulation says. Section 301.6231(a)(3)-l(a)(4), Proced. & Admin. Regs., goes like this: Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner: (i) Contributions to the partnership; (ii) Distributions from the partnership; and * * * I acknowledge that section 301.6231(a)(3)-l(a)(4), Proced. & Admin. Regs., is less than a model of clarity — it doesn’t just say that contributions to, and distributions from, a partnership are partnership items. It says “items relating to” them are — but only “to the extent that a determination of such items can be made from determinations that the partnership is required to make * * * for purposes of the partnership books and records or for purposes of furnishing information to a partner.” (Emphasis added.) In the very first paragraph of section 301.6231(a)(3)-l(a), Proced. & Admin. Regs., however, the regulation unequivocally states that all the items it lists as partnership items are “required to be taken into account for the taxable year of a partnership under subtitle A.” We can’t just ignore this language. That’s why in Hambrose Leasing 1984-5 Ltd. P’ship v. Commissioner, 99 T.C. 298, 311 (1992), we held: While, at first blush, * * * [section 301.6231(a)(3)-l(a)(4), Proced. & Admin. Regs.] may seem broad enough to permit virtually any determination of an item in a partnership level proceeding so long as it is related, even remotely, to the partnership, an item is not a partnership item under this subparagraph unless required to be taken into account for the taxable year of the partnership. Sec. 6231(a)(3); sec. 301.6231(a)(3)-l(a), Proced. & Admin. Regs. We also held that for something to be a partnership item under the regulation, it has to at least have an “effect on the partnership, its books and records, or [some] other aspect of the partnership.” Id. Likewise, in Dakotah Hills Offices Ltd. P’ship v. Commissioner, T.C. Memo. 1996-35, we held: (citing by analogy Dial USA, Inc. v. Commissioner, 95 T.C. 1, 4 (1990)); see also Olsen-Smith, Ltd. v. Commissioner, T.C. Memo. 2005-174.[11] [T]he determination of whether an item is a partnership item does not depend upon whether the item is determinable from information actually available at the partnership level. * * * The critical factor is whether the partnership was required to make a determination of that item. * * * In Petaluma I we did change course and relied on Allen Family Foods, Inc. v. Commissioner, T.C. Memo. 2000-327. We claimed in Petaluma I that Allen Family Foods supported the idea that “[s]ection 301.6231(a)(3)-1(c)(2) and (3), Proced. & Admin. Regs., provides that partnership items include determinations that relate to contributions and distributions to the extent that those determinations do not require information that is outside the Court’s jurisdiction.” Petaluma I, 131 T.C. at 99. We then reasoned that since [o]utside basis is related to a partner’s contributions and share of distributions!,] * * * [when] a partnership is disregarded for tax purposes * * *, the Court may determine that the partner’s outside basis is zero without requiring a partner-level [factual] determination because there can be no adjusted basis in a disregarded partnership. * * * [Id. at 99-100.[12]] Allen Family Foods, however, only repeated the language in the temporary regulation, and held that we lacked jurisdiction in a corporate-level proceeding to decide the amount of the shareholder’s basis in an S corporation. Allen Family Foods, T.C. Memo. 2000-327. This is a strong hint that our reliance on Allen Family Foods in Petaluma I was seriously misplaced. The majority, however, makes no mention of these pre-Petaluma I cases. And although I agree that a partnership must determine certain items — partnership items such as contributions and distributions — so that the partner can figure out his basis in the partnership, Tigers Eye itself was never required to determine its partners’ outside bases, and its partners’ outside bases had no effect on its taxable year. The majority even acknowledges as much. See op. Ct. pp. 106-107 (“Tigers Eye needed to provide that information to the option partners so that they could properly determine their bases in the distributed property.” (Emphasis added.)) C. Odder still is the majority’s invocation of Chevron. See op. Ct. pp. 124-126. Having misconstrued the regulation, the majority moves on to defend its validity — something which no one has challenged before. The most troubling part of the majority’s analysis on this seemingly superfluous subject is its assertion that “the Secretary considered the treatment of partnership items in a detailed and reasoned fashion before making a final decision.” See op. Ct. p. 125. In explaining the regulations at the time of their publication, however, the Secretary gave no hint that he regarded outside basis as a partnership item under section 301.6231(a)(3)-l(a)(4) and (c), Proced. & Admin. Regs., absent a section 754 election. See 51 Fed. Reg. 13212, 13213 (Apr. 18, 1986). There’s certainly nothing like the majority’s analysis — that if contributions and distributions are partnership items, outside basis must be a partnership item too. Instead, the explanation straightforwardly reasons that where a partnership makes a section 754 election, “[t]he determination of the transferee partner’s basis in his partnership interest is a partnership item because that determination is necessary in order for the partnership to make certain partnership-level determinations with respect to the transferee partner’s basis in partnership property.” Id. (emphasis added). Even more tellingly, before our decision in Petaluma 7, the Internal Revenue Manual (irm) said that outside basis was generally an affected item: [T]he amount of a partner’s initial contribution to capital would be a fact developed at the partnership level, that would be the partnership item, but the utilization of that amount in the computation of basis and any dis-allowance of a loss at the partner level would be the affected item subject to deficiency procedures (30-day or 90-day letter). [IRM pt. 4.31.2.2.14(7) (June 1, 2004).[13]] The clarity of the old IRM on this point suggests that the majority’s Chevron analysis actually serves to undermine the validity of the regulation as the majority construes it. For in section 6231(a)(3), Congress made it clear that the Secretary can’t just make any item a partnership item — he can only make an item a “partnership item” if it is • an item required to be taken into account for the taxable year of a partnership under any provision of the income tax code; and • one that he determines in the regulations to be a partnership item and more appropriately determined at the partnership level. The first of these requirements is the most glaring problem for the majority. Apart from peculiar cases like partnerships that make section 754 elections or partnerships that hold partnership interests in other partnerships, a partnership does not have to take outside basis into account for its own tax year. If the majority’s reading of the regulation is correct, there really would be a problem with its validity because it would conflict with the requirement that an item be taken into account for the taxable year of a partnership. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-843 (1984) (an agency “must give effect to the unambiguously expressed intent of Congress”). There would also be a problem because of the Code’s other requirement. Section 6231(a)(3) tells the Secretary that he must determine that an item is more appropriately determined at the partnership level to list it as a partnership item in the regulations. Other than in the case of a partnership’s section 754 election, there is no evidence in section 301.6231(a)(3)-l, Proced. & Admin. Regs., that the Secretary made this finding for outside basis. And I don’t believe that he could reasonably conclude that outside basis, as a general matter, is more appropriately determined at the partnership level than at the partner level. See Petaluma II, 591 F.3d at 655 (noting that nothing about the concept of outside basis indicates that it is more appropriately determined at the partnership level). This means that if the regulation did say what the majority says it does, it would be quite vulnerable to a Chevron challenge: Even if a statute is susceptible of more than one interpretation, an agency’s interpretation is unreasonable if it doesn’t comport with the statute’s requirements. See AT&T Corp. v. Iowa Utils. Bd., 525 U.S. 366, 388-392 (1999). The majority never grapples with these problems, and certainly never pins them down. h — I HH The majority s challenge to Petaluma II is not limited to the question of whether outside basis is a partnership item. It also goes after Petaluma IPs analysis of our jurisdiction over penalties in partnership-level cases. A. Section 6226(f) says that we have jurisdiction at the partnership level to determine “the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.” The fundamental problem in defining our jurisdiction over penalties at the partnership level is that imposing a penalty requires an underpayment of tax from which the penalty can be computed. An underpayment is generally the difference between the correct income tax determined by the IRS and the amount stated by the taxpayer on his return. See sec. 6664(a). It’s axiomatic that partners, not partnerships, pay tax. This makes it hard to distinguish penalties that relate to partnership items from penalties that don’t, since penalties ultimately are calculated on underpayments, which isn’t something partnership returns generate by themselves. In Petaluma II, the D.C. Circuit interpreted section 6226(f)’s grant of jurisdiction much more narrowly than the majority does today. It declined to allow the finding that a partnership was a sham to confer on us jurisdiction at the I — I partnership level to determine penalties relating to outside basis, which it held to be an affected item. Petaluma II, 591 F.3d at 655-656. It also vacated our holding and told us to decide on remand whether the penalties “relate to an adjustment to a partnership item” and “could have been computed without partner-level proceedings.” Id. In Petaluma III we interpreted the D.C. Circuit’s mandate to mean that “if the penalty does not relate directly to a numerical adjustment to a partnership item, it is beyond our jurisdiction.” Petaluma III, 135 T.C. at 587.[14] We held that there were no such adjustments to which a penalty could apply — there were no partnership items flowing through to the partners’ returns as nondeficiency computational adjustments, and the sham determination in that case only indirectly affected the outside basis determination at the partner level. Id. Petaluma III is controlling authority — we have the same Son-of-BOSS variety and this case is also appealable to the D.C. Circuit. Our decision today overrules Petaluma III. B. Overruling Petaluma III on jurisdiction over penalties would be understandable if it were only a side effect of our reaffirmation of Petaluma I that outside basis is a partnership item. But the majority says that even if it is wrong about outside basis, we would still have jurisdiction to determine the applicability of penalties relating to it. The majority opines that “[i]n the case of a disregarded partnership, regardless of whether a disallowance of outside basis is at play and regardless of whether outside basis is a partnership item or an affected item, any adjustment at the partner level is preceded by one or more adjustments to partnership items, and a penalty is related to those partnership-level adjustments.” See op. Ct. p. 142. This conclusion rests on the opinion’s broad interpretation of “relates to” in section 6226(f), a construction that has been rejected by both the D.C. and Federal Circuits. TEFRA doesn’t define the term, so the majority adopts the broadest dictionary definition — requiring only a mere logical or causal connection — and cites the general rule that words are construed according to their ordinary and everyday meaning. But with a law as complicated as tefra, the context in which words are used matters. The words “relate”, “related”, and “relates” have different shades of meaning depending on the sense in which they are used. We should look to see if the individual words are colored by the context in which they are used, as well as the structure and evident purpose of the act. See, e.g., People of Puerto Rico v. Shell Co., 302 U.S. 253, 258 (1937) (statute’s meaning should “be arrived at not only by a consideration of the words themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed”). This counsels against a broad construction of “relates to.” In tefra world, there’s generally no partnership-level jurisdiction over affected items even though we know by definition that all affected items “relate to” partnership items— they couldn’t be affected items if they weren’t affected by determinations of partnership items. See sec. 6231(a)(5). But if we hold that all penalties relating to affected items are also “penalties] * * * relate[d] to an adjustment to a partnership item,” we would have to conclude Congress wanted this Court to determine the applicability of penalties for all affected item adjustments at the partnership level. Sec. 6226(f). This would be unreasonable because adjustments to the affected items themselves don’t get determined until partner-level proceedings, and it’s usually only in Wonderland, see Lewis Carroll, Alice’s Adventures in Wonderland 109 (Oxford Univ. Press 2009) (1865), or in the more unpleasant judicial systems around the world that “penalty first — verdict afterwards” is the rule.[15] And, of course, even if Congress wanted the applicability of penalties related to affected items to be determined at the partnership level, doing so by making “the applicability of penalties relating to partnership items” — with no mention of affected items— seems an odd way of expressing it. Note especially the Code’s use of the word “adjustments” instead of “determinations” in section 6226(f). We have usually interpreted “adjustment” to mean a numerical increase or decrease. See Southern v. Commissioner, 87 T.C. 49, 55 (1986) (construing “adjustment” in section 702(a)(7)); see also S. Rept. No. 105-33, at 254 (1997), 1997-4 C.B. 1081, 1334 (“An adjustment determined to be correct would thus have the effect of increasing the taxable income that is deemed to have been reported on the taxpayer’s return”); Staff of J. Comm. on Taxation, General Explanation of the Tax Legislation Enacted in 1997, at 370 (J. Comm. Print 1997). All adjustments are determinations, but not all determinations are adjustments. This distinction helps explain the line that the D.C. Circuit drew in Petaluma II between penalties that “could have been assessed without partner-level computations” and penalties that could not. Petaluma II, 591 F.3d at 656. The majority implies that determining that a partnership is a sham is an adjustment to a partnership item but doesn’t explain why. See, e.g., op. Ct. pp. 135, 140. Petaluma II agreed that the determination that a partnership is a sham is a determination of a partnership item, but it did not hold that it was an adjustment. The majority, however, tries to get around this by reasoning that the penalties also relate to the adjustments to contributions and distributions made in the FPAA. See op. Ct. pp. 140-142. These determinations certainly were adjustments — contributions and distributions were reduced to zero. But do the penalties that the Commissioner asserts “relate to” these adjustments? The Government made a very similar argument in Jade Trading, LLC v. United States, 98 Fed. Cl. 453, 460 (2011) (Jade Trading III), aff’d, 451 Fed. Appx. 954 (Fed. Cir. 2012), contending that a finding that a partnership was a sham permitted the application of penalties without regard to the partners’ outside bases because it caused Jade Trading’s inside basis in the spread transaction to be reduced to zero. Id. But the court disagreed: Defendant cannot convert what it characterizes as a determination that Jade was a sham * * * into a wholly separate finding that something other than the individual partners’ outside bases justifies applying penalties at the partnership level. As Plaintiffs persuasively argue, “the sham characterization in Petaluma may represent a legitimate ‘partnership item’ but the impact on the partner-specific ‘outside basis’ stands one step removed from the partnership proceeding.” [Citation omitted.] The accuracy-related penalties this Court applied were all predicated on misstatements and erroneous reporting attributable to the * * * [partners’] inflated bases in Jade. * * * [Id. at 461.] The Government also argued that misstating the basis to the partnership of property that the partners contributed (i.e., inside basis) — which undoubtedly is a partnership item, see sec. 301.6231(a)(3) — 1(a)(4), Proced. & Admin. Regs. — also made the penalties based on misvaluation related to adjustments to partnership items. But the court rejected this argument too because the Government had not “demonstrated that any understatement of tax * * * resulted from the contribution.” Id. And the court frowned upon the Government’s attempt to “focus on these contributions in isolation * * * and then use these contributions, standing alone, to trigger penalties.” Id. I do agree with the majority that the amount of the underpayment of tax can’t be determined at the partnership level — it’s determined in a notice of computational adjustment or a notice of deficiency proceeding at the partner level. Yet unlike the majority, I believe that we have jurisdiction at the partnership level only over penalties that relate directly to numerical adjustments to partnership items. See Petaluma III, 135 T.C. at 587. More specifically, the penalty must relate to a partnership-item adjustment that seems capable of being summarily assessed as a computational adjustment.[16] See Thompson v. Commissioner, 137 T.C. 220, 242 (2011) (Holmes, J., dissenting) (explaining which computational adjustments I believe are subject to deficiency procedures and which ones aren’t). In conclusion, I believe that we shouldn’t challenge the D.C. Circuit on the issue of our partnership-level jurisdiction over penalties any more than we should challenge it on the issue of outside basis as a partnership item.[17] Of all the routines in judicial gymnastics, few have a higher degree of difficulty than the reverse benchslap, and we’re trying for a combination double with our Opinion today. I’ll stand a safe distance off to one side, and respectfully dissent. Thornton and Kroupa, JJ., agree with part I of this dissent. See also Media Space, Inc. v. Commissioner, 135 T.C. 424, 433-434 (2010) (“The Tax Court will generally defer to the rule adopted by the Court of Appeals for the circuit to which appeal would normally lie, if that Court of Appeals has ruled with respect to the identical issue”); Porter v. Commissioner, 132 T.C. 203, 220 (2009) (“This case is appealable * * to the * * * Fourth Circuit. Under the rule laid down in Golsen * * * we abide by that court’s precedent”); Estate of Kyle v. Commissioner, 94 T.C. 829, 850 (1990) (“Any appeal in this case lies to the * * * Fifth Circuit, and we are bound by any decision of that court squarely in point”); Hendrix v. Commissioner, T.C. Memo. 2011-133 (“This case is appealable to the * * * Fifth Circuit, and we follow precedent of that court that is squarely on point”); Peter D. Dahlin Att’y at Law, P.S. v. Commissioner, T.C. Memo. 2007-310 (“Pursuant to Golsen * * * this Court will follow the precedent established in the court to which an appeal would lie”); Cutts v. Commissioner, T.C. Summary Opinion 2004-8 (Beghe, J.) (“Because any appeal in this case, if it were permissible, would lie to the * * * Eleventh Circuit, we follow the precedent established in that Circuit”). Petaluma FX Partners, LLC v. Commissioner, 591 F.3d 649, 654—655 (D.C. Cir. 2010) (.Petaluma II), aff’g in part, rev’g in part, and vacating in part and remanding on penalty issues 131 T.C. 84 (2008) (Petaluma I); Jade Trading, LLC v. United States, 598 F.3d 1372, 1380 (Fed. Cir. 2010) (Jade Trading II). See, e.g., Jade Trading, LLC v. United States, 98 Fed. Cl. 453, 460 (2011) (Jade Trading III), aff’d, 451 Fed. Appx. 954 (Fed. Cir. 2012); Gosnell v. United States, No. CV-09-01399-PHX— NVW, 2011 U.S. Dist. LEXIS 72224, at *5 n.2 (D. Ariz. June 28, 2011); Fid. Int’l Currency Advisor A Fund, LLC v. United States, 747 F. Supp. 2d 49, 237 (D. Mass. 2010). But see K2 Trading Ventures, LLC v. United States, 101 Fed. Cl. 365 (2011) (in dicta erroneously saying all FPAA items, which included outside basis, were partnership items without considering Jade Trading II). See secs. 465, 706, 775, 1402, 1446, 6031, 6223, 6224, 6226, 6227, 6228, 6229, 6230, 6231, 6241, 6242, 6247, 6248, 6251, 6252. Section 706 reads: SEC. 706. TAXABLE YEARS OF PARTNER AND PARTNERSHIP. (a) Yeae In Which Partnership Income Is Includible. — In computing the taxable income of a partner for a taxable year, the inclusions required by section 702 and section 707(c) with respect to a partnership shall be based on the income, gain, loss, deduction, or credit of the partnership for any taxable year of the partnership ending within or with the taxable year of the partner. (b) Taxable Year. — • (1) Partnership’s taxable year.— (A) PARTNERSHIP treated AS taxpayer. — The taxable year of a partnership shall be determined as though the partnership were a taxpayer. The Code is actually clearer than Judge Wherry’s elaborately detailed and cognitively challenging grammatical and syntactical analysis lets on. I believe Congress added the phrase “to the extent regulations prescribed by the Secretary provide that * * * such item is more appropriately determined at the partnership level than at the partner level” to section 6231(a)(3), so that the Secretary would not pervert and subvert the preceding part of section 6231(a)(3)’s definition — as the majority does today — in promulgating regulations listing what are partnership items. Congress wanted to kick the ladder out from under the Secretary if he went picking fruit that Congress didn’t want picked at the partnership level. I would therefore hold that “any item required to be taken into account for the partnership’s taxable year” under the provisions of the income tax code would be one the Secretary could reasonably find “more appropriately determined at the partnership level than at the partner level.” And that means there will never be the situation like the one dreamed up by Judge Wherry in note 11 of his concurrence — it’s more of a red herring than a Trojan horse. The “more appropriately determined” language clarifies the rest of section 6231(a)(3) and seems to foreclose possible deviations from the statute’s plain language. The majority acknowledges only one instance where outside basis is an affected item — when a partner buys his partnership interest from a third party. See op. Ct. pp. 117-118. “When a new partner acquires a partnership interest, he typically pays fair market value for that interest, which can result in discrepancies between his outside basis and his share of the partnership’s inside basis. To help balance out those discrepancies, section 754 allows a partnership to elect to adjust the inside basis of partnership assets to reflect the new partner’s different outside basis.” Kligfeld Holdings v. Commissioner, 128 T.C. 192, 197 (2007); see secs. 743(b), 754. We noted in Petaluma I that outside basis can also be a partnership item when there is a tiered partnership — a partnership that owns an interest (i.e., has outside basis) in a second partnership. See Petaluma I, 131 T.C. at 99. The majority goes to great lengths to try to distinguish Dial USA, Inc. v. Commissioner, 95 T.C. 1 (1990), where we held that a shareholder’s basis in the stock of a corporation is not a subchapter S item that can be decided at the corporate level. The majority says that our past reliance on Dial to hold outside basis is an affected item is misplaced because these cases didn’t examine the regulation defining “partnership items,” and Dial involved our jurisdiction to determine subchapter S items at the corporate level. See op. Ct. pp. 119-120. The problem with its analysis, however, is that we did look at and rely on the Code and regulations to reach our conclusion that shareholder basis is not an item that can properly be decided in the subchapter S corporate proceeding. See Dial, 95 T.C. at 3-6. Nowhere in our analysis in Dial did we view the subchapter S regulations as modifying the TEFRA regulations, and we explicitly recognized that the TEFRA provisions “which govern the ‘judicial determination of partnership items’ and those that ‘relate to partnership items’” were incorporated into the subchapter S provisions. Id. at 3. Because Dial actually analyzed the TEFRA regulations, our later cases that relied on Dial were not simply thoughtless extensions of the S corporation provisions to partnerships. See my dissent in Thompson v. Commissioner, 137 T.C. 220, 242 (2011), which discusses the types of affected items I believe are subject to deficiency procedures. The IRS originally took the same position in the Appeals Office section of the Manual. See IRM pt. 8.19.1.6.9.4(2)(F) (Apr. 1, 2004). That changed only after — and because of — our holding in Petaluma I. See IRM pt. 8.19.1.6.9.4(2)(F) (Feb. 10, 2009). I have no desire here to get into the probable future debate about the weight we give an agency’s own construction of its regulations, or the specific weight we give the IRM. But the IRS’s own initial interpretation of the regulation would seem to undermine the majority’s view. The IRM’s later adoption in one section of a contrary view simply brings to mind the old aphorism of administrative law that an agency’s interpretation of a regulation that conflicts with its prior interpretation is “entitled to considerably less deference than a consistently held agency view.” E.g., Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515 (1994). In this case the Commissioner did assert penalties relating to adjustments to some of Tigers Eye’s partnership items — $242,186 of partnership loss and $11,314 of “Other Deductions” — that are “capable of being ‘computed without partnership-level deficiency proceedings.’ ” I agree with the majority that we have jurisdiction to determine the applicability of those penalties. Or as we say in tax world, under section 7491(c) the Commissioner has the burden of producing evidence that there is an underpayment of tax where he thinks it appropriate to impose the relevant penalty. m reiterate what I noted in Thompson: The Secretary should not view our Opinion as foreclosing the possibility that he could clear this area up much more efficiently through regulation than the Commissioner has been able to do through litigation. Thompson v. Commissioner, 137 T.C. at 244 (Holmes, J., dissenting). Judge Halpern’s concurring opinion incorrectly compares this case to 106 Ltd. v. Commissioner, 136 T.C. 67 (2011). 106 Ltd. involved a nonliquidating distribution from a partnership and a different variety of Son-of-BOSS — one where the partnership itself, rather than the contributing partner, incorrectly valued the paired options that were contributed — taking the value of the long position but ignoring the offsetting short position — which, as a consequence, caused the partnership to grossly overstate the capital contributions and distributions it reported. See Halpern op. pp. 149-150.