# United States Tax Court

165 T.C. No. 2

MOXON CORPORATION,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 727-18L.                                    Filed July 2, 2025.

_____

P corporation was a partner in entity AD. R issued a Notice of Final Partnership Administrative Adjustment regarding AD, setting forth R's disallowance of purported losses and assertion of an I.R.C. § 6662(h) penalty. R's determinations were largely sustained in a partnership-level proceeding. R then issued P affected items Notices of Deficiency determining deficiencies and I.R.C. § 6662(h) penalties based on the result of the partnership-level proceeding. However, R mailed the affected items Notices of Deficiency to an incorrect address. P did not file a Tax Court petition in response to those Notices, and R assessed the deficiencies and penalties.

R later issued collection notices to P, and P requested a collection due process hearing. R determined that the collection actions should be sustained and issued P a Notice of Determination stating the same. P filed a Petition with this Court in response.

R eventually realized that he had mailed the affected items Notices of Deficiency to an incorrect address. R requested that this case be remanded for a supplemental collection due process hearing, after which R issued P a Supplemental Notice of Determination reflecting the Appeals officer's determination that the deficiencies were

subject to deficiency procedures and would be abated. However, the Appeals officer determined that the penalties were not subject to deficiency procedures and would not be abated.

The parties filed Cross-Motions for Partial Summary Judgment regarding certain of the Appeals officer's determinations with respect to the penalties. P claimed that the Appeals officer erred, arguing that (1) the penalties are subject to deficiency procedures and/or (2) no penalties can apply because "the penalties are a function of the tax, which is zero." R claimed that the Appeals officer correctly determined that (1) the penalties are not subject to deficiency procedures and (2) the fact that the relevant deficiencies were improperly assessed does not affect R's assessments regarding, and ability to collect, the penalties.

*Held*: The I.R.C. § 6662(h) penalties at issue are not subject to deficiency procedures pursuant to I.R.C. § 6230(a)(2)(A)(i).

*Held, further*, the fact that the relevant deficiencies were improperly assessed does not affect R's assessments regarding, and ability to collect, the I.R.C. § 6662(h) penalties.

———————

*Harriet A. Wessel* and *Jasper G. Taylor III*, for petitioner.

*Sharmeen Ladhani, Brooke N. Stan, Sheila R. Pattison, Christina D. Sullivan*, and *Siang L. Sang*, for respondent.

OPINION

GOEKE, *Judge*: Pending before the Court are Cross-Motions for Partial Summary Judgment filed by the parties on March 18, 2025. The facts described below are stated solely for the purpose of deciding the Motions for Partial Summary Judgment and are not findings of fact for this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Considering the facts and law,

we will grant respondent's Motion for Partial Summary Judgment and deny petitioner's Motion for Partial Summary Judgment.

*Background*

Petitioner was a partner in AD Global FX Fund, LLC (AD Global), during 1999.[1] In 1999 AD Global used paired foreign currency options to generate tens of millions of dollars in purported losses for AD Global's partners, including petitioner. On October 15, 2004, respondent issued a Notice of Final Partnership Administrative Adjustment (FPAA) to AD Global's tax matters partner (TMP) disallowing the purported losses and asserting various alternative penalties, including a 40% gross valuation misstatement penalty pursuant to section 6662(h).[2] In 2005 AD Global's TMP filed a Complaint contesting respondent's determinations in the U.S. District Court for the Southern District of New York. AD Global's case was consolidated with related cases, and on June 25, 2014, the consolidated cases were dismissed pursuant to a stipulation by the parties. *See AD Global FX Fund, LLC v. United States* (*AD Global*), No. 05-CV-223 (S.D.N.Y. June 25, 2014). Respondent's determinations, as set forth in the FPAA regarding AD Global, were almost entirely sustained.[3]

Pursuant to section 6230(a)(2)(A)(i), in March and April 2015 respondent mailed petitioner affected items Notices of Deficiency (SNODs) that were based on the outcome in *AD Global*. However, respondent mailed the SNODs to an incorrect address. One of the SNODs pertained to petitioner's 1999 tax year and reflected respondent's determination of a $12,615,331 deficiency and a $5,046,132 section 6662(h) penalty. The other SNOD pertained to petitioner's 2000 tax year and reflected respondent's determination of a $1,134 deficiency and a $454 section 6662(h) penalty.[4] Petitioner did not file a petition

---

[1] Before its repeal, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, governed the tax treatment and audit procedures for many partnerships, including AD Global.

[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round monetary amounts to the nearest dollar.

[3] Certain of respondent's adjustments to AD Global's partners' outside bases were not sustained.

[4] The small deficiency for 2000 pertained to a disallowed net operating loss carryforward from 1999.

with this Court in response to either SNOD, and respondent assessed the deficiencies and penalties on August 17, 2015.

Petitioner did not pay the assessed deficiencies or penalties. On May 2, 2017, respondent issued petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing (Notice of Lien). On May 30, 2017, respondent issued petitioner a Final Notice–Notice of Intent to Levy and Notice of Your Right to a Hearing (Notice of Intent to Levy). Petitioner timely filed Forms 12153, Request for a Collection Due Process or Equivalent Hearing, in response to both the Notice of Lien and the Notice of Intent to Levy. After a Collection Due Process (CDP) hearing (during which petitioner offered to compromise the outstanding liabilities for $1,000), an Appeals officer determined that the lien and the proposed levy should be sustained. On December 20, 2017, a Notice of Determination setting forth those determinations was issued to petitioner. Petitioner timely petitioned this Court for review. Petitioner was incorporated and maintained its principal office in New York State when it filed its Petition.

Respondent's counsel later discovered that the administrative record did "not include a copy of the [SNODs] or certified mail list or any other indication that respondent's [Appeals] Officer verified that the [SNODs] w[ere] mailed to petitioner's last known address." At respondent's request (with no objection from petitioner) we ordered that the case be remanded to the Internal Revenue Service (IRS) Independent Office of Appeals for a supplemental CDP hearing. After the supplemental CDP hearing was held, petitioner was issued a Supplemental Notice of Determination. The Appeals officer wrote in the Supplemental Notice of Determination that

> Appeals cannot verify the IRS complied with proper procedures for mailing the [SNODs] per IRM 8.22.5.4.2.1.1 for the periods ending December 31, 1999, and December 31, 2000. Although the SNODs were mailed via certified mail, there is no evidence to support they were properly mailed to the taxpayer's last known address. Deficiencies of $12,615,331 in 1999 and $1,134 in 2000 are partner-level determinations and are subject to deficiency procedures. Since proper procedures cannot be verified, those assessments are invalid and will be abated. However, per IRC 6230(a)(2)(A)(i), the penalties of $5,046,132.40 in 1999 and $453.60 in 2000 are not subject to deficiency procedures, so the last known address issues with the

notices of deficiency are not relative [sic] with respect to any assessment of such penalties and are those [sic] assessments are sustained.

There is no dispute that the deficiencies for 1999 and 2000 will be abated. However, petitioner argued that the penalties should also be abated, while respondent argued that the Appeals officer properly sustained the penalties. On March 18, 2025, the parties filed Cross-Motions for Partial Summary Judgment regarding certain of the Appeals officer's determinations with respect to the penalties.[5] Each party filed a response on April 17, 2025.

*Discussion*

I.     *Summary Judgment and Standard of Review*

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We may grant summary judgment when, as in this case, there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. A partial summary adjudication is appropriate if some but not all issues in the case may be decided as a matter of law, even though not all the issues in the case are disposed of. *See* Rule 121(a)(1); *Turner Broad. Sys., Inc. & Subs. v. Commissioner*, 111 T.C. 315, 323–24 (1998).

In a CDP case our standard of review depends on whether the underlying liability is at issue. When the taxpayer's underlying liability is properly at issue, we review the IRS's determinations regarding such liabilities de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Section 6330(c)(2)(B) permits taxpayers to challenge the existence or amount of their

---

[5] There is a section 6751 issue in dispute that the parties did not address in their Motions for Partial Summary Judgment. The parties agree that the U.S. Court of Appeals for the Second Circuit (to which an appeal of this case would presumably lie, *see* § 7482(b)(1)(B)) is considering the same issue in *Warner Enterprises, Inc. v. Commissioner*, No. 24-611 (2d Cir. filed Feb. 29, 2024), and that the decision in that case will be controlling precedent in petitioner's case. Having considered the section 6751 issue (including our ruling for the Commissioner on the issue in *Warner Enterprises, Inc. v. Commissioner*, T.C. Memo. 2022-85) we judge that there is no reason to wait for the Second Circuit before ruling on the parties' Motions for Partial Summary Judgment. We will address the section 6751 issue separately, after the Second Circuit has ruled.

underlying tax liability only if they did not receive a notice of deficiency or otherwise have a prior opportunity to contest that liability. A taxpayer is precluded from disputing the underlying tax liability in a CDP case before this Court if the taxpayer failed to properly raise the merits of the underlying tax liability as an issue during the CDP hearing. *Giamelli v. Commissioner*, 129 T.C. 107, 112–15 (2007).

When the underlying liability is not at issue, we review the IRS's determinations for abuse of discretion. *Hoyle v. Commissioner*, 131 T.C. 197, 200 (2008), *supplemented by* 136 T.C. 463 (2011); *Goza*, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). When a determination by an Appeals officer is predicated upon an error of law, that determination constitutes an abuse of discretion. *See Alessio Azzari, Inc. v. Commissioner*, 136 T.C. 178, 191 (2011) (citing *Swanson v. Commissioner*, 121 T.C. 111, 119 (2003)), *supplemented by* T.C. Memo. 2012-310.

In his response to petitioner's Motion for Partial Summary Judgment, respondent briefly argued that "[s]ince petitioner did not raise any underlying liability challenges to the penalty liabilities [during the CDP hearing], petitioner is precluded from doing so now at the Tax Court level." Petitioner argued that it is not challenging the underlying penalty liabilities, only the Appeals officer's determination that the penalties should not be abated as a matter of law. Petitioner claimed that the Appeals officer's determination was predicated upon an error of law, which constituted an abuse of discretion.

Considering the basis for the Appeals officer's determination set forth in the Supplemental Notice of Determination, we agree with petitioner. The Supplemental Notice of Determination correctly reflects that the Appeals officer considered determinations regarding the correctness of the assessments to be part of their verification that "the requirements of any applicable law or administrative procedure have been met." *See* § 6330(c)(1). While there is no indication in the administrative record that petitioner specifically raised penalty assessment issues during the supplemental CDP hearing, we "review the Appeals officer's verification under section 6330(c)(1) without regard to whether [a] taxpayer raised it at the Appeals hearing" if the taxpayer raised the issue before this Court in a timely manner. *Hoyle*, 131 T.C. at 202–03; *see* Rule 331(b)(4). The Appeals officer's determination not to abate the penalty assessments was raised by petitioner before this Court

in a timely manner after the supplemental CDP hearing. Accordingly, we will review whether that determination was based on a correct interpretation of applicable law.

II.    *Summary of the Parties' Arguments*

Petitioner alleged that the Appeals officer erred as a matter of law in determining that the penalties should not be abated. Petitioner made two primary arguments in support of its position. First, petitioner argued that deficiency procedures apply to the penalties and the penalties should therefore be abated because the SNODs were not sent to petitioner's last known address. Second, petitioner argued that the penalties should be abated because "the penalties are a function of the tax, which is zero."

Respondent alleged that the Appeals officer correctly determined that the penalties should not be abated. Respondent argued that the "penalties were determined to be applicable at the partnership-level, and deficiency procedures do not apply to such penalties." Disputing petitioner's second argument, respondent argued that "[p]etitioner's tax liabilities can be determined even when assessment [of the tax liabilities] is prohibited" and that penalties based on such tax liabilities were properly assessed and may be collected.

III.   *Whether Deficiency Procedures Apply to the Penalties*

The purpose of TEFRA was to provide a method for uniformly and efficiently adjusting and resolving items of partnership income, loss, deduction, or credit without the necessity of separate proceedings for each partner. *See Boyd v. Commissioner*, 101 T.C. 365, 369 (1993); *Maxwell v. Commissioner*, 87 T.C. 783, 787 (1986). Pursuant to TEFRA procedures, adjustments to partnership items and the applicability of penalties which relate to such adjustments are determined in a partnership-level proceeding and not in a partner-level proceeding. § 6221. The deficiencies set forth in the SNODs were based on adjustments to partnership items determined in *AD Global*, which was a partnership-level proceeding. Likewise, the applicability of the section 6662(h) penalties set forth in the SNODs was determined in *AD Global*.

Adjustments to partnership items in a partnership-level proceeding may result in adjustments to the tax liabilities of individual partners. Once adjustments to partnership items become final, the Commissioner must generally initiate further action at the partner level to adjust an individual partner's tax liability. If such action gives rise to

an affected item (i.e., items affected by a partnership item adjusted at the partnership level, *see* § 6231(a)(5)) that requires partner-level determinations, it is subject to the deficiency procedures under sections 6211 through 6216, and the Commissioner must issue an affected items notice of deficiency to the partner before assessing the tax. *See* § 6230(a)(2)(A)(i).

Penalties determined to apply in a partnership-level proceeding do not follow the same track. Rather, section 6230(a)(2)(A)(i) exempts "penalties, additions to tax, and additional amounts that relate to adjustments to partnership items" from "[d]eficiency proceedings." We have held that "[p]ursuant to section 6230(a)[, a section 6662(h) penalty determined to apply in a partnership-level proceeding] may be directly assessed as a computational adjustment, notwithstanding the need for partner-level determinations." *Thompson v. Commissioner*, 137 T.C. 220, 239 (2011), *rev'd and remanded on other grounds*, 729 F.3d 869 (8th Cir. 2013). Even if the Commissioner issues an affected items notice of deficiency that includes such a penalty, "[t]he issuance of [such] a purported notice of deficiency cannot trigger deficiency procedures where none applies." *Id.* We have similarly held "that the deficiency procedures [do not] apply to the assessment of any partnership-item penalty determined at the partnership level, regardless of whether further partner-level determinations are required." *Domulewicz v. Commissioner*, 129 T.C. 11, 23 (2007), *aff'd in relevant part, remanded in part sub nom. Desmet v. Commissioner*, 581 F.3d 297 (6th Cir. 2009). We also addressed this issue in *Gunther v. Commissioner*, T.C. Memo. 2019-6, at *14, *aff'd*, 789 F. App'x 836 (11th Cir. 2020), ruling in that deficiency case "that we have no jurisdiction in this pre-payment forum to consider . . . penalties determined at the partnership level." Because we lacked jurisdiction with respect to the penalties at issue, we held that "we have no authority to enjoin . . . collection or assessment" of the penalties, denied taxpayers' motion to restrain the collection or assessment insomuch as it pertained to the penalties, and granted the Commissioner's motion to dismiss the penalties from the case. *Id.* at *14–15. Opinions issued by other courts are in line with our precedent. *See United States v. Woods*, 571 U.S. 31, 42 n.2 (2013) (discussing the Commissioner's ability "to assess the 40-percent penalty directly"); *Highpoint Tower Tech. Inc. v. Commissioner*, 931 F.3d 1050, 1060 (11th Cir. 2019) ("[Section] 6230(a)(1) and (a)(2)(A)(i) clearly exclude[s] the [section 6662(h)] penalty at issue from Tax Court deficiency jurisdiction . . . ."); *Chai v. Commissioner*, 851 F.3d 190, 197 n.5 (2d Cir. 2017) ("Penalties determined in a partnership proceeding, even if they require a partner-level substantive

determination, are excepted from the affected-item notice of deficiency requirement."), *aff'g in part, rev'g in part on another issue* T.C. Memo. 2015-42; *Gosnell v. United States*, 525 F. App'x 598, 600 (9th Cir. 2013) ("[I]t was proper for the IRS to directly assess [the taxpayer's] share of the penalties as a computational adjustment without following deficiency procedures, regardless of whether partner-level determinations were required to do so.").

Although the statutory text and precedent favor respondent's position, petitioner urges us to side with it. Considering the clear precedent regarding this issue, we will only briefly address petitioner's arguments.

Some of petitioner's arguments are based on strained readings of relevant statutes. For example, petitioner argued that

> section 6230(a)(2)(A)(i) provides, in relevant part: "Subchapter B shall apply to any deficiency attributable to . . . affected items which require partner level determinations (other than penalties, additions to tax, . . . )" The penalties here are attributable to affected items which require partner level determinations. Therefore, by inverse inference, section 6230(a)(2)(A)(i) literally provides that subchapter B does not *necessarily* apply to a deficiency attributable to the penalties in this case. Indeed, given that a true statement's inverse is not necessarily true, while subchapter B contains procedures for initiating and maintaining deficiency proceedings, it would be incorrect to conclude, as the [Appeals officer] apparently did, that section 6230(a)(2)(A)(i) establishes that these procedures have no relevance to the penalties in this case.

(Citations and footnote omitted.) Petitioner relatedly argued that

> support for the proposition that section 6230(a)(2)(A)(i) establishes only that a taxpayer may not dispute . . . penalties in a deficiency proceeding follows from the headings of relevant Code sections. The headings in section 6230 refer to "Deficiency *Proceedings*" while, by contrast, the heading in subchapter B is "Deficiency *Procedures* in the Case of Income, Estate, Gift and Certain Excise Taxes." The logical inference . . . is that deficiency *proceedings* do

not apply to penalties subject to section 6230(a)(2)(A)(i) even though deficiency *procedures* may apply.

(Footnote omitted.) Petitioner concluded that the "only effect [of section 6230(a)(2)(A)(i)] is to preclude a partner from disputing, in a deficiency proceeding only, a penalty approved in a TEFRA proceeding and asserted against the partner through an affected items SNOD. That is, while deficiency *proceedings* do not apply to the penalties, deficiency *procedures* do." Petitioner did not address our caselaw ruling "that the deficiency *procedures* [do not] apply to the assessment of any partnership-item penalty determined at the partnership level, regardless of whether further partner-level determinations are required." *Domulewicz*, 129 T.C. at 23 (emphasis added). We reject petitioner's argument and reaffirm our precedent for the reasons discussed at length in *Domulewicz* and other cases cited in this *Discussion* Part III.[6]

Petitioner also argued that

Respondent evidently believes that deficiency *procedures* continue to apply to the[] penalties: Respondent inserted penalties in the SNODs and assessed them at the same time as the taxes, more than 90 days after the April 24, 2015 date on the SNODs, as opposed to simply assessing them immediately without any SNODs, as Respondent would have done had the penalties been assessable penalties.[7] . . . If Respondent had instead believed that the

---

[6] We note that the captions/headings petitioner referenced in its arguments do "not have the force of law, *see* sec. 7806(b) (providing that no 'descriptive matter relating to the content of this title [shall] be given any legal effect'), and cannot cloud the plain words of the statute." *Rowen v. Commissioner*, 156 T.C. 101, 112 n.9 (2021) (first citing *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 222–23 (1996); then citing *N.Y. & Presbyterian Hosp. v. United States*, 881 F.3d 877, 886 n.13 (Fed. Cir. 2018); and then citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 222 (2012)). The meaning of section 6230(a) is clear, and petitioner's attempt to draw a distinction between "proceedings" and "procedures" in the captions/headings is not convincing.

[7] Petitioner stated that it "believes [it] to be the case" that respondent's penalty assessments were timely. We agree that the penalty assessments were timely. Section 6229(d) provides that the period of limitations with respect to partnership and affected items is suspended for one year after the date that a court decision in a partnership proceeding becomes final. *AD Global* was dismissed on June 25, 2014. That dismissal operates as a decision, which became final on August 24, 2014. *See* § 6226(h); Fed. R. App. P. 4(a)(1)(B). Respondent assessed the penalties on August 17, 2015, which was

penalties did not depend on the SNODs' validity, there would be no apparent reason for him not to have assessed them immediately, as soon as the SNODs were issued.

Petitioner did not address the fact that the Commissioner also included penalties in the affected items notices of deficiency at issue in *Thompson*, *Domulewicz*, and *Gunther*. The penalties at issue were properly dismissed from each of those cases; the fact that they were included in affected items notices of deficiency was of no consequence. Similarly, the fact that respondent included penalties in the SNODs at issue in this case is of no consequence; deficiency procedures simply do not apply to the penalties.

Finally, petitioner pointed to a lengthy footnote in *Thompson* in which we discussed "ambiguity in the parenthetical phrase 'other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items' at the end of sec[tion] 6230(a)(2)(A)(i)." *See Thompson*, 137 T.C. at 239 n.24. We concluded that "[d]espite having issued [an affected items notice of deficiency that included a penalty determined to apply in a partnership-level proceeding], the Commissioner can proceed with a direct assessment and collection of the penalty, limiting the taxpayer partner's recourse to a suit or claim for refund."[8] *Id.* (citing § 6230(c)(4)). Petitioner argued that the footnote is incorrect, and that any ambiguity should be resolved in petitioner's favor.[9] Petitioner pointed out that we resolved the ambiguity by "turn[ing] to [Treasury Regulation § 301.6231(a)(6)-1(a)(3)] for guidance." *Id.* We cited *Mayo Foundation for Medical Education & Research v. United States*, 562 U.S. 44, 55–56 (2011), which

---

before August 24, 2015, and therefore timely considering only the dismissal date. *See* § 6229(d).

Furthermore, AD Global's 1999 tax return was not filed until October 6, 2003, and respondent issued an FPAA regarding AD Global on October 15, 2004. Accordingly, only slightly more than one year of the three-year period of limitations had run at the time the FPAA was issued. *See* § 6229(a). The FPAA and the subsequent partnership proceeding caused the running of the period of limitations to be suspended until August 24, 2015. *See* § 6229(d). As of that date, nearly two years remained on the period of limitations.

[8] In a later case we held that taxpayers may also raise partner-level defenses to such penalties in a CDP case. *McNeill v. Commissioner*, 148 T.C. 481, 489 (2017).

[9] Petitioner similarly argued that a dissent in *Thompson* written by the same Judge that wrote this Opinion is correct and favors petitioner's position. However, that dissent pertained to deficiencies determined in the affected items notice of deficiency at issue and did not address the penalties. *See Thompson*, 137 T.C. at 240–42 (Goeke, J., dissenting).

clarified "that the Commissioner's regulatory pronouncements are generally entitled to the standard of deference set forth in *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984)." *Thompson*, 137 T.C. at 239 n.24. Petitioner claimed that "[r]esort to regulations to clarify what the court believes to be a statutory ambiguity is no longer valid after" the Supreme Court's ruling in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2266 (2024) (overruling *Chevron* and stating that if a government agency's interpretation of a statute "is not the best, it is not permissible").

Even considering section 6230(a)(2)(A)(i) under the *Loper Bright* standard, we would still rule for respondent. Although we previously noted a certain amount of "ambiguity" in section 6230(a)(2)(A)(i), *Thompson*, 137 T.C. at 239 n.24, the statute clearly favors respondent's position overall, *see Domulewicz*, 129 T.C. at 22 ("Under a plain reading of [the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1238(b)(2), 111 Stat. 788, 1026], the effect of th[at] amendment was to remove partnership-item penalties from the deficiency procedures . . . ."); *see also Hamel v. Commissioner*, T.C. Memo. 2025-19, at *9–10 (addressing a similar challenge regarding section 6230(a)(2)(A)(i) made in a motion for reconsideration and concluding that "[o]ur foregoing statutory analysis [in *Domulewicz*] holds true, notwithstanding the decision in *Loper Bright*"), *supplementing* T.C. Memo. 2024-62.[10] Furthermore, we have found, and petitioner has cited, no case in which a court has interpreted section 6230(a)(2)(A)(i) in the same manner that petitioner has. Rather, caselaw (cited throughout this *Discussion* Part III) entirely supports respondent's position.

In addition the Supreme Court cautioned that by overruling *Chevron* it did not "call into question prior cases that relied on the *Chevron* framework. The holdings of those cases . . . are still subject to statutory *stare decisis* despite [the Supreme Court's] change in interpretive methodology." *Loper Bright*, 144 S. Ct. at 2273. Regardless

---

[10] Opinions from other Courts and, indeed, many of our own opinions do not note any ambiguity in section 6230(a)(2)(A)(i). *See, e.g.*, *Highpoint Tower Tech. Inc. v. Commissioner*, 931 F.3d at 1060 (describing section 6230(a)(2)(A)(i) as "unambiguous"); *Gunther*, T.C. Memo. 2019-6, at *11–12 (discussing "the plain language of" section 6230(a)(2)(A)(i)). However, we need not reconsider our statement in *Thompson*, 137 T.C. at 239 n.24, regarding the existence of "ambiguity" in section 6230(a)(2)(A)(i) because we would rule for respondent even if we again concluded that the statute was ambiguous.

of the extent to which the holding in *Thompson* relies on the standard of review set forth in *Chevron*, that holding is entitled to stare decisis.

We again hold that penalties determined in a partnership-level proceeding are not subject to deficiency procedures pursuant to section 6230(a)(2)(A)(i). Rather, such penalties are assessable by the Commissioner. Taxpayers may raise any partner-level defenses to the penalties in a refund action or in a CDP case. § 6230(c)(1)(C), (4); *McNeill*, 148 T.C. at 489.

IV.     *Effect of Deficiency Abatements on Penalties*

The parties agree that the deficiencies included in the SNODs will be abated. What effect, if any, this has on the penalties at issue presents an issue of first impression in this Court.

Section 6662(a) provides that "[i]f this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies."[11] The term "underpayment" is defined in section 6664(a) as follows:

> Sec. 6664(a). Underpayment.—For purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of—
> >     (1) the sum of—
> > >         (A) the amount shown as the tax by the taxpayer on his return, plus
> > >         (B) amounts not so shown previously assessed (or collected without assessment), over
> >     (2) the amount of rebates made.
> For purposes of paragraph (2), the term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made.

Paragraphs (1)(B) and (2) are not relevant in this case.

---

[11] As relevant in this case, section 6662(h) increases the amount of a penalty to 40% in the case of a "gross valuation misstatement[]."

Petitioner argued that there is no underpayment to which a section 6662 penalty may apply. Petitioner's arguments center on the term "tax imposed" in section 6664(a). Petitioner claimed that "a tax cannot be deemed 'imposed' . . . where the taxing authority has decreed that the tax need not be paid" and that "for a tax to be deemed 'imposed', at a minimum it must be required to be paid." However, we interpret the term "tax imposed" in section 6664(a) as the amount of tax imposed by Congress (through the Code) that is required to be shown on a taxpayer's return, not an amount based on respondent's ability to assess and collect.

We have described the "basic formula" of section 6664(a) as "(correct tax − reported tax = underpayment)." *Feller v. Commissioner*, 135 T.C. 497, 510 (2010). For reasons discussed *infra*, this formula accurately describes the first part of the formula as the "correct tax" rather than the tax that can be collected.

The Supreme Court has stated that "[i]n its numerous uses throughout the Code, it is clear that the term 'assessment' refers to little more than the calculation or recording of a tax liability." *United States v. Galletti*, 541 U.S. 114, 122 (2004) (first citing § 6201; then citing § 6203; then citing § 6204; and then citing Statement of Procedural Rules, 26 C.F.R. § 601.103); *see also* § 6501(a) ("[T]he amount of any tax imposed by this title shall be assessed within 3 years after the return was filed . . . ."); *Laing v. United States*, 423 U.S. 161, 170 n.13 (1976) (describing an assessment as "essentially a bookkeeping notation" regarding a taxpayer's account). The Supreme Court has likewise stated that "a taxpayer's 'liability' for unpaid taxes" is separate from the IRS's "official 'assessment' of what the delinquent taxpayer owes." *Polselli v. IRS*, 143 S. Ct. 1231, 1239 (2023) (first citing § 6203; and then citing *Galletti*, 541 U.S. at 122). The Supreme Court has also recognized that taxes are imposed by Congress, rather than by the IRS. *See Moore v. United States*, 144 S. Ct. 1680, 1693 (2024) (noting that taxpayers sought "to differentiate the [Mandatory Repatriation Tax] from . . . other taxes long imposed by Congress" and discussing Congress's taxing power throughout the opinion). In sum, a taxpayer's liability for a tax imposed by Congress is distinct from whether the IRS has, or may, assess and collect that liability. *See Polselli*, 143 S. Ct. at 1239; *Galletti*, 541 U.S. at 122. This favors respondent's position.

Other precedent also favors respondent's position. In *Snow v. Commissioner*, 141 T.C. 238, 247 (2013), *supplementing* T.C. Memo. 2013-114, we held that "the section 6662 penalty [at issue is based] on

an 'underpayment' amount that represents the amount of revenue that the Government was deprived of as a result of amounts actually shown on [the taxpayer's] return." We further stated that "[t]he underpayment . . . is equal to the true amount the Government was deprived of as a result of [the taxpayer's] return." *Id.* at 247–48. *Snow* supports the proposition that when determining the amount of an underpayment, the focus is on the correct amount of tax that was required to be *reported*, not on what amount the Commissioner is able to collect. *See id.*

Our ruling in *Snow* was based to a significant extent on Treasury Regulation § 1.6664-2. Treasury Regulation § 1.6664-2(a) provides that the amount of an underpayment is equal to the amount of income tax imposed minus the amount shown as the tax by the taxpayer on their return plus amounts of tax not shown on the return that were previously assessed or collected plus the amounts of rebates made. Treasury Regulation § 1.6664-2(b) provides that "the 'amount of income tax imposed' is the amount of tax imposed on the taxpayer under subtitle A for the taxable year,[12] determined without regard to" tax payments, certain credits, and taxes not required to be assessed on the return. Petitioner argued that Treasury Regulation § 1.6664-2(b)

> define[s] "tax imposed" as being *not* reduced for specified amounts, even though the taxpayer has previously paid them. Yet the regulations make no mention of amounts Respondent is barred from assessing for procedural reasons such as a lack of a deficiency notice or the statute of limitations. There is no reason to think that amounts would be *included* in the penalty base when the taxpayer was never obligated to pay them in the first place.[13]

(Citation omitted.) We believe the reason that Treasury Regulation § 1.6664-2(b) does not mention amounts that cannot be assessed is that compiling an exhaustive list of items not factoring into the "amount of income tax imposed" would be impractical. Furthermore, petitioner *was* obligated to report the tax at issue on its 1999 and 2000 tax returns and *was* obligated to pay that tax at the time required by Congress. That petitioner generated tens of millions of dollars in purported losses

---

[12] We note that subtitle A of the Code, titled "Income Taxes," pertains to taxes imposed, while Code sections regarding the Commissioner's assessment and collection authority and the period of limitations are found in subtitle F, titled "Procedure and Administration."

[13] Petitioner did not challenge the validity of Treasury Regulation § 1.6664-2(b).

through AD Global, failed to comply with its reporting and payment obligations, and then was fortunate in that respondent mailed the SNODs to an incorrect address does not mean that petitioner "was never obligated to pay [the taxes] in the first place." Petitioner's argument on this point is based on a fiction and is unconvincing.

Petitioner also argued that "neither the Code nor the Treasury regulations define the term 'imposed' and the word may mean different things in different contexts." However, in *Wasie v. Commissioner*, 86 T.C. 962, 969–70 (1986), we discussed the word "imposed" as used in section 4941, stating:

> [The taxpayer] argues that the word "imposed" means determined by means of a statutory notice. [The Commissioner] argues that the word "imposed" does not mean that [the Commissioner] must take affirmative steps to determine, assess, or collect the tax. We agree with [the Commissioner]. The use of "imposed" in section 4941 is no different from its use in section 3 [regarding taxes imposed on individuals] or 11 [regarding taxes imposed on corporations]. The imposition of the tax by Congress merely establishes its existence thereby facilitating its determination, assessment, collection, overpayment, etc., within the context of the internal revenue laws. Accordingly, in that context, it is not necessary that the tax under section 4941(a)(1) and 4941(b)(1) be determined or enforced, but only that it has been congressionally imposed and it may be determined or enforced by [the Commissioner].

In petitioner's case, respondent may not assess/enforce the tax imposed by Congress because the limitations period expired. However, respondent may, *and has*, determined the amount of petitioner's correct tax.[14] The correct tax (i.e., the tax imposed) can be used to calculate an underpayment upon which a section 6662 penalty may be based. *See* § 6664(a).

In *Baur v. Commissioner*, 2 T.C. 1016, 1018 (1943), *aff'd*, 145 F.2d 338 (3d Cir. 1944), we addressed section 510 of the Revenue Act of 1932, stating that "[t]he 'tax imposed by this title' means whatever tax the

---

[14] Outside of petitioner's legal argument (discussed in this Opinion) that the tax imposed is zero, petitioner has not challenged respondent's determinations of the tax imposed for 1999 and 2000.

[taxpayer] is required to pay under the statute." Petitioner argued that *Baur* supports its position because respondent may no longer assess or collect tax for 1999 and 2000, allegedly meaning that petitioner is not required to pay anything and there is no tax imposed. However, we read *Baur* to refer to the correct tax imposed by Congress and required to be reported on a return, rather than the amount of tax that may still be assessed and/or collected by the Commissioner. *See Baur v. Commissioner*, 145 F.2d at 340 (noting that the liability at issue "ar[ose] by virtue of the positive statutory imposition of Sec. 510").

The doctrine of setoff also supports respondent's position. When a taxpayer claims a tax refund from the government, setoff allows the government to defend against such a claim by raising a tax that was not reported and/or paid, even if the Commissioner may no longer assess or collect that tax because the limitations period expired. As the Supreme Court has explained:

> An overpayment must appear before refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.

*Lewis v. Reynolds*, 284 U.S. 281, 283 (1932). The Federal Court of Claims has stated that

> [i]n a refund action, the taxpayer cannot recover unless he has overpaid his tax. It is not enough that he can prevail on the particular items on which he sues, for he may have underpaid with respect to other components entering into that tax. Only if the overall balance moves his way can he recover. His entire tax liability under the particular tax return is therefore open for redetermination.

*Dysart v. United States*, 169 Ct. Cl. 276, 282 (1965). Thus, even when the Commissioner may no longer assess or collect a tax imposed by Congress, such liability still exists and can be used to reduce or eliminate any overpayment claimed by a taxpayer. Similarly, the tax liabilities imposed on petitioner still exist even though respondent may not assess or collect them. That tax can be (and was) used to calculate the underpayments upon which the section 6662 penalties may be based. *See* § 6664(a).

Petitioner argued that *Adams v. Commissioner*, 72 T.C. 81 (1979), *supplementing* 70 T.C. 373 (1978), *aff'd*, 688 F.2d 815 (1982) (unpublished table decision), supports its position. Petitioner claimed that in that case, "the court held that the second-level excise tax under [section] 4941(a) is 'imposed' when liability for it becomes final, 'clearly not' when the statutory notice is mailed." *Adams* is inapposite; it involved a section 4941 "second-level tax" that was part of an odd statutory scheme in which "the second-level tax is not imposed, assuming no correction occurs, until the expiration of the correction period. However, the correction period does not expire until the decision of this Court with respect to the second-level tax becomes final." *Adams*, 72 T.C. at 85. Noting that the statutory scheme was "anything but clear," we stated "that for us to piece together a procedure to reach the results intended by Congress in this and subsequent cases would necessitate rewriting many portions of the statute. This we decline to do." *Id.* at 86. Accordingly, on the basis of the specific and odd statute written by Congress, we ruled that the section 4941 tax at issue had not, and could not have, been imposed at the time the Commissioner mailed the notice of deficiency.[15] *See Adams*, 72 T.C. at 85–86. No such statutory scheme exists in petitioner's case, and there is no basis to rule that the relevant taxes have not been imposed.

Petitioner also pointed to *Occidental Petroleum Corp. v. United States*, 231 Ct. Cl. 334, 335 n.2 (1982), in which the Federal Court of Claims stated that a particular "'regular tax imposed' is the amount of taxes [the taxpayer] would have been required to pay if the minimum tax and the foreign tax credit provisions had not been enacted." Petitioner emphasized the term "would have been required to pay," but this is clearly a reference to what tax would have been imposed by Congress under a hypothetical situation, not a holding that a tax liability must be collectible by the Commissioner for it to be deemed imposed. *See id.*

For the reasons discussed *supra*, we hold that the deficiencies determined in the SNODs represent "tax[es] imposed" pursuant to section 6664(a). Although respondent improperly assessed, and may not collect, the associated underpayments, the relevant statutory scheme

---

[15] Section 4941 was later amended by Congress, resolving the issues with the statutory text discussed in *Adams*. Act of Dec. 24, 1980, Pub. L. No. 96-596, § 2(a)(1)(A) and (B), (2)(A), (3)(A), 94 Stat. 3469, 3469–71.

devised by Congress clearly allows for section 6662 penalties based on those underpayments to be assessed and collected. *See* § 6230(a)(2)(A)(i).

V.    *Conclusion*

With respect to the section 6662(h) penalties at issue, (1) the deficiency procedures do not apply and (2) the fact that the relevant deficiencies were improperly assessed does not affect respondent's assessments and ability to collect the penalties. We have considered all arguments made, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

*An appropriate order will be issued granting respondent's Motion for Partial Summary Judgment and denying petitioner's Motion for Partial Summary Judgment.*